IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | |
|---|---|
| KYLE BENGSTON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| V. | ) 3:06-cv-00569-MEF |
| | ) |
| DAVID BAZEMORE, O.D. et al., | ) |
| | ) |
| Defendants. | ) |

*RECEIVED 2007 AUG -6 A 8:16  DEBRA P. HACKETT, CLK U.S. DISTRICT COURT MIDDLE DISTRICT ALA.*

## DAVID BAZEMORE, O.D., AND WAL-MART STORES, INC.'S MOTION FOR SUMMARY JUDGMENT

COME NOW David Bazemore, O.D., and Wal-Mart Stores, Inc. (hereinafter referred to as "Wal-Mart") the Defendants in the above-referenced matter, by and through their undersigned attorneys, and respectfully move this Honorable Court to enter a Summary Judgment in their favor on the grounds that there is no genuine issue as to any material fact, and that David Bazemeore, O.D., and Wal-Mart Stores, Inc. are entitled to a judgment as a matter of law. In support of this Motion for Summary Judgment, David Bazemeore, O.D., and Wal-Mart say and state as follows:

### SUMMARY OF ARGUMENT

This is a failure to diagnose medical malpractice case governed by the Alabama Medical Liability Act (the "AMLA") wherein the Plaintiff claims that his optometrist, Dr. Bazemore, failed to diagnose him with glaucoma, delayed in diagnosing him with glaucoma, and failed to refer him to an ophthalmologist. The Plaintiff's expert's criticism of Dr. Bazemore's treatment of the Plaintiff is limited to criticizing the

1

instruments and/or procedures utilized by Dr. Bazemore in his glaucoma screening tests. However, the Plaintiff's expert does not and cannot say that, if the instruments advocated by him were used by Dr. Bazemore, that the test results would have been any different. Therefore, the Plaintiff has failed to adduce any evidence whatsoever of causation. In essence, the Plaintiff's claims are that if Dr. Bazemore would have performed different tests on the Plaintiff, it is **possible** that his exam findings would have been different, and that he **possibly** should have diagnosed the Plaintiff with glaucoma, or **possibly** should have referred him to an ophthalmologist for further examination. As set out below, the AMLA does not allow recovery in a medical malpractice action based on a mere possibility. Therefore, the Plaintiff has failed to meet his burden of proof under the AMLA. Accordingly, Dr. Bazemore and Wal-Mart are entitled to a summary judgment in their favor.

Dr. Bazemore is not an employee of Wal-Mart. Moreover, Wal-Mart retained no control over the manner and method of Dr. Bazemore's practice of optometry. Therefore, there is no basis of liability on behalf of Wal-Mart.

## FACTS

### I. Dr. Bazemore's Treatment of the Plaintiff

This is a medical malpractice case governed by the AMLA. The Plaintiff claims that Dr. Bazemore failed to diagnose him with glaucoma. (*See* Amended Complaint at ¶ 9, attached hereto as Exhibit 1). Dr. Bazemore, one of the Defendants, is a licensed doctor of optometry, who at all times relevant to this action worked as an optometrist at Wal-Mart's Opelika, Alabama store. (*Id.* at ¶15). Kyle Bengtson, the Plaintiff, was a patient of Dr. Bazemore's from March 24, 2000 until August 20, 2004. (*Id.* at ¶6). The Plaintiff saw Dr. Bazemore on four occasions during this time period. On each of these visits Dr. Bazemore

performed a thorough comprehensive examination of the Plaintiff including conducting tests that specifically screen for the symptoms of glaucoma. (*See* Expert Report of Dr. Brett Basden, attached hereto as Exhibit 2; Expert report of Dr. Richard Murphy, attached hereto as Exhibit 3). Those tests include, but are not limited to tonometry, which measures the patient's intraocular pressure ("IOP"), a slit lamp examination, which measures the patient's anterior chamber angles, a visual field test, which measures the patient's peripheral vision, observing the patient's optic nerve for any abnormalities, pallor, or atrophy, and screening for any afferent pupil defect. (*See id.*) At no time did any of the glaucoma screening tests show any symptoms of glaucoma. (*See id.*)

A. March 24, 2000 Visit

On the Plaintiff's first visit to Dr. Bazemore, his chief complaint was "[d]ecreased distance vision noticed last several weeks. Near vision is okay." (Deposition of Dr. David Bazemore page 140, lns 9-11. attached hereto as Exhibit 4). A "Marcus Gunn" pupillary defect test was conducted to test if the Plaintiff had any nerve damage, which would indicate that his IOP had been elevated in the past and that test was normal. (Deposition of Dr. David Bazemore page 143, lns 4-10; Exhibit 5 to Deposition of Dr. David Bazemore). A visual fields peripheral vision screening test was conducted and it was normal. (Deposition of Dr. David Bazemore page 147, lns 3-7; Exhibit 5 to Deposition of Dr. David Bazemore). A slit-lamp exam was conducted wherein the Plaintiff's eyes' anterior angles were graded as wide open. (Deposition of Dr. David Bazemore page 148, lns 10-18; Exhibit 5 to Deposition of Dr. David Bazemore). Dr. Bazemore measured the Plaintiff's IOP via non-contact tonometry and the Plaintiff's pressure was 17 mm hg in the right eye and 16 mm hg for the left eye. (Deposition of Dr. David Bazemore page 149, lns 13-23; Exhibit 5 to Deposition of Dr. David Bazemore). "IOP is the best indicator of problems associated with

glaucoma and any measurement of 21 mmHg or below is considered normal." (Expert Report of Dr. Richard Murphy at page 2).

### B. October 2, 2001 Visit

The Plaintiff's second visit to Dr. Bazemore was on October 2, 2001. At that visit, the Plaintiff's vision had changed very little since his last visit and his chief complaint was that he "wants contacts. Never worn." (Deposition of Dr. David Bazemore page 155, lns 18-19; Exhibit 5 to Deposition of Dr. David Bazemore). A "Marcus Gunn" pupillary defect test was conducted to test if the Plaintiff had any nerve damage, which would indicate that his IOP had been elevated in the past, and that test was normal. (Deposition of Dr. David Bazemore page 156, lns13-14; Exhibit 5 to Deposition of Dr. David Bazemore). A peripheral vision screening test was conducted, and it was normal. (Deposition of Dr. David Bazemore page 158, lns13-19; Exhibit 5 to Deposition of Dr. David Bazemore). A slit-lamp exam was conducted wherein the Plaintiff's eyes' anterior angles were graded as wide open. (Deposition of Dr. David Bazemore page 159, lns7-23; Exhibit 5 to Deposition of Dr. David Bazemore). Dr. Bazemore measured the Plaintiff's IOP via non-contact tonometry, but the Plaintiff was squeezing his eye shut causing an elevated pressure on that instrument, so tonometry was conducted with a Goldmann's tonometer and the Plaintiff's pressure was 20 mm hg in the right eye and 19 mm hg for the left eye. (Deposition of Dr. David Bazemore page 161, lns 14-23, page 162, lns 1-12; Exhibit 5 to Deposition of Dr. David Bazemore).

### C. September 27, 2003 Visit

The Plaintiff's third visit to Dr. Bazemore was on Semptember 27, 2003. At that visit, the Plaintiff's chief complaint was "checkup and update contact lenses." (Deposition of Dr. David Bazemore page 164, lns 13-15; Exhibit 5 to Deposition of Dr. David Bazemore). A "Marcus Gunn" pupillary defect test was

4

conducted to test if the Plaintiff had any nerve damage, which would indicate that his IOP had been elevated in the past, and that test was normal. ( Deposition of Dr. David Bazemore page 165, ln 13; Exhibit 5 to Deposition of Dr. David Bazemore). A peripheral vision screening test was conducted, and it was normal. (Deposition of Dr. David Bazemore page 167, ln 21-page 168, ln 3; Exhibit 5 to Deposition of Dr. David Bazemore). A slit-lamp exam was conducted wherein the Plaintiff's eyes' anterior angles were graded as wide open. (Deposition of Dr. David Bazemore page 168, lns 4-12; Exhibit 5 to Deposition of Dr. David Bazemore). Dr. Bazemore measured the Plaintiff's IOP via non-contact tonometry, and the Plaintiff's pressure was 12 mm hg in the right eye and 14 mm hg for the left eye. (Deposition of Dr. David Bazemore page 169, lns 15-16; Exhibit 5 to Deposition of Dr. David Bazemore).

### D. August 20, 2004 Visit

The Plaintiff's fourth and final visit to Dr. Bazemore was on August 20, 2004. This is the visit specifically referenced in the Plaintiff's complaint. At that visit, the Plaintiff's chief complaint was "[t]rouble with right eye. Has film over it and is worse at night. Sees halos around lights. And it's been that way for approximately two months with minor worsening." (Deposition of Dr. David Bazemore page 175, ln 18-page 176, ln 3; Exhibit 5 to Deposition of Dr. David Bazemore). A "Marcus Gunn" pupillary defect test was conducted to test if the Plaintiff had any nerve damage, which would indicate that his IOP had been elevated in the past, and that test was normal. (Deposition of Dr. David Bazemore page 179, lns 8-10; Exhibit 5 to Deposition of Dr. David Bazemore). A peripheral vision screening test was conducted, and it was normal. (Deposition of Dr. David Bazemore page 183, ln 23 -page 184, ln 4; Exhibit 5 to Deposition of Dr. David Bazemore). A slit-lamp exam was conducted wherein the Plaintiff's eyes' anterior angles were graded as wide open. (Deposition of Dr. David Bazemore page 185, lns 7-11; Exhibit 5 to

Deposition of Dr. David Bazemore). Dr. Bazemore measured the Plaintiff's IOP via non-contact tonometry and the Plaintiff's pressure was 13 mm hg in the right eye and 12 mm hg for the left eye. (Deposition of Dr. David Bazemore page 187, lns 3-5; Exhibit 5 to Deposition of Dr. David Bazemore).

## II. The Plaintiff's Claims

On July 26, 2006, the Plaintiff filed an amended complaint in this action.[1] That complaint alleges claims of medical negligence and medical wantonness against both Dr. Bazemore and Wal-Mart. The Plaintiff makes the following factual allegations to support the two causes of action:

> 9. Defendant Bazemore failed to diagnose, delayed in diagnosing, and failed to refer the Plaintiff to an ophthalmologist in spite of Plaintiff's serious and acute vision problems.
>
> 10. On or about March 7, 2005, Dr. Gregory Sipinski, [sic] M.D., an ophthalmologist, diagnosed the Plaintiff with glaucoma.
>
> 11. On May 4, 2005, Plaintiff had surgery on his right eye in an attempt to treat the glaucoma which Defendant Bazemore had failed to diagnose.
>
> 12. Had said diagnosis been made earlier, said surgery would not have been necessary.
>
> 13. Plaintiff has lost all vision in his right eye and is now blind in his right eye.
>
> 14. Had a diagnosis of glaucoma, or referral to an ophthalmologist been made earlier, Plaintiff, a 29 year old man, would not be blind in his right eye.
>
> 15. Upon information and belief, Defendant Bazemore was working at the facility of Defendant Wal-Mart Stores, Inc., as an optometrist during all times relevant to this Complaint, and Defendant Wal-Mart Stores, Inc. is liable for the tortuous conduct of Defendant Bazemore, even if Bazemore was not an employee under agency principles of Alabama law.

Complaint at ¶¶ 9-15.

---

[1] The Plaintiff amended his original complaint to change the first name of Defendant Dr. Bazemore from John to David, and to add Wal-Mart as a defendant to this action.

### III. Dr. Bazemore's Relevant Testimony

The Plaintiff's visual acuity had gone from 20/50 to 20/100 between his third and fourth visit with Dr. Bazemore. (Deposition of Dr. David Bazemore page 174, lns 4-13). The

> [f]ar and away most common [reason for such a change in visual acuity] would be a change in his glasses prescription. He could have also had a cataract. He could have also had a corneal injury that left a scar. He could have a retinal problem. You know, a lot of things.

(Deposition of Dr. David Bazemore page 174, lns 18-23). When asked about whether an episode of angle closure glaucoma could contribute to vision loss, Dr. Bazemore testified that "that would be very uncommon." (Deposition of Dr. David Bazemore page 175, lns 1-3).

Dr. Bazemore testified that it is fairly common in his practice to have patients who present with a complaint of seeing halos. He testified that he hears that complaint about every day. (Deposition of Dr. David Bazemore page 177, lns 6-12). He testified that blurry vision can be caused by "retinal problems, central serous retinopathy, retinal detachments ... optic neuritis, hyphema, iritis." (Deposition of Dr. David Bazemore page 188, lns 10-23, 189, lns 1-13).

### IV. Expert Testimony

#### A. Dr. Richard M. Murphy, O.D.

Dr. Richard M. Murphy, O.D., is a licensed optometrist in the State of Alabama. (Report of Dr. Richard Murphy at page 1). Dr. Murphy has been engaged in the practice of optometry for over 23 years. Prior to giving his expert opinion in this case, he reviewed Dr. Bazemore's care of the Plaintiff as well as Dr. Sepanski's care of the Plaintiff. *(Id.)*.

Dr. Murphy states in his expert report that the Plaintiff's IOP on the date of his last visit with Dr.

Bazemore (August 20, 2004) were normal. He states that IOPs of 21 mm hg or below are considered normal. (*Id* at page 2.). He also states that "[i]t is very important to note that at no time during Dr. Bazemore's treatment of the Plaintiff did his IOPs fluctuate above normal ranges." (*Id.*). Dr. Murphy went on to state in his expert report that there were no findings by Dr. Bazemore that would be considered symptoms of glaucoma. *(See id.* pages 2-3).

B. Dr.Brett Basden, O.D.

Dr. Brett Basden, O.D., is a licensed optometrist in the State of Alabama. (Report of Dr. Brett Basden at page 1 ). Dr. Basden has been in the private practice of optometry for over 15 years. Prior to giving his expert opinion in this case, he reviewed Dr. Bazemore, Dr. Sepanksi and Dr. Reed Cooper's notes from their treatment of the Plaintiff. (*Id.*).

Dr. Basden stated generally as follows: The diagnosis of acute angle glaucoma, the type of glaucoma that the Plaintiff has, can only be done when the patient is in the acute stages of glaucoma with IOP elevation. On each examination by Dr. Bazemore, there was no evidence of intraocular pressure elevation. There was no evidence of chronic glaucoma. The optic nerves were normal and symmetrical with no pallor or atrophy. In addition, there was no evidence of afferent pupil defect, which would indicate optic nerve damage. Dr. Bazemore also examined the ocular media, including the cornea, with no evidence of corneal edema or inflammation consistent with acute glaucoma. *(See id* at pages 1-2).

C. Dr.Thomas Landgraf, O.D., F.A.A.O.

While Dr. Murphy and Dr. Basden's expert opinions are important for the Court for the purpose of understanding this lawsuit, Dr. Landgraf's expert report and deposition testimony are more important and relevant to this Motion for Summary Judgment. Of the utmost importance is about what Dr. Landgraf

did not and cannot testify. That is that even if Dr. Bazemore had performed the tests Dr. Landgraf contends to be the standard of care in Alabama, that the results from those tests would have shown anything different than the results written down on Dr. Bazemore's exam notes.

Dr. Landgraf is a licensed optometrist in the State of Tennessee. (Report of Dr. Thomas Landgraf at page 1, attached hereto as exhibit 5). He is employed as a professor of optometry at the Southern College of Optometry in Memphis. Dr. Landgraf reviewed Dr. Bazemore's office and exam notes from his optical care given to the Plaintiff, and also reviewed notes from Dr. Sepanksi's treatment of the Plaintiff before making his opinion. *(Id.)*.

Dr. Landgraf states in his expert report that Dr. Bazemore "failed to meet the standard of care in regards to the history and exam findings in the [Plaintiff]." *(Id* at pages 1-2.). The general basis of Dr. Landgraf's criticism of Dr. Bazemore is that he failed to assess the Plaintiff's anterior chamber angle via gonioscopy and conduct tonometry via goldmann tonometry at each of the Plaintiff's visits with Dr. Bazemore. *(Id* at page 2.). However, as shown by the following passages from Dr. Landgraf's deposition, he did not and cannot testify what those tests and the other glaucoma screening tests would have shown had they been conducted on the Plaintiff's final visit with Dr. Bazemore:

> Q. So as we sit here today, can you tell me what Mr. Bengston's actual intraocular pressure was on 8/20/04?
>
> A. No.

Deposition of Dr. Landgraf at page 134 lns 18-2, attached hereto as Exhibit 6.

> Q. So if the Goldmann's – Bottom line is that if the Goldmann's had been done, you don't know what it would have shown on that date; is that correct?

A. No, I don't.

Q. Could it have been 13 and 12 on the Goldmann's as well?

A. I guess.

Q. The angle on that date – Dr. Bazemore graded his angle as being open on that date. Do you agree? Is that reflected in the notes under the slit lamp exam?

A. See, I had trouble reading this. I need to know what this says. This is hard to read, a lot of the writing here. This says lid, I think, OD. This says – There's a slash and then it says – I can't tell if that's a 14/4 and maybe there's a GR 40U. But 1 3/4, I don't know what that means.

Q. Well, Dr. Bazemore testified to that in his deposition, and I believe he said that the 4 indicated that the angle was wide open.

A. By estimation.

Q. Yes.

A. By the Von Herrick.

Q. Right. Do you have any reason to disagree with that?

A. The estimation of the angle, if he wrote that down and he knows how to do that technique, then, sure, I agree.

Deposition of Dr. Landgraf at page 135, ln 14-page 136, ln 20.

Q. How quickly can an angle closure develop?

A. Within hours. But then it can go away on its own spontaneously. It can be intermittent. So you really need to know what the angle looks like.

Deposition of Dr. Landgraf at page 140, lns 18-22.

Q. Do you know as we sit here today whether Mr. Bengtson had an affery pupillary defect–

10

> A. Afferent.
>
> Q. – afferent pupillary defect on August 20, 2004?
>
> A. He wrote down no.
>
> Q. And you don't have any evidence to suggest otherwise, do you?
>
> A. It just concerned me, again, because of his deposition, what he said about that.
>
> Q. Mr. – I'm sorry. Go ahead.
>
> A. Because he did end up with an afferenct pupillary defect.

Deposition of Dr. Landgraf at page 144, lns 4-16.

> Q. Do you have any evidence to suggest that the optic nerve did not appear normal on Mr. Bengtson's visit of August 20, 2004 to Dr. Bazemore?
>
> A. All you can say is that the CD was normal, cup to disc ratio, .4 and .35. There's no other comments here about other parts of the optic nerve that are evaluated typically on patients.

Deposition of Dr. Landgraf at page 145, lns 9-17.

> Q. You say if a patient complains of haloes around lights, you have to make sure they don't have angle closure; is that correct?
>
> A. That would be the most important condition to rule out because it's the most devastating condition to the patient's vision that causes haloes around lights as a symptom.
>
> Q. How would you go about making sure that they don't have angle closure?
>
> A. Measure Goldmann tonometry and do gonioscopy.
>
> Q. Could you imagine a scenario where a patient came in and complained of haloes around lights and then when you did Goldmann's had normal pressure and when you did gonioscopy found that he had no blockages

11

> of any kind or closures?
>
> A.  Yes.
>
> Q.  Tell me what kind of scenario that would be.
>
> A.  Anything that causes a severe corneal edema, maybe the Pseudophakic Bullous K. But I would write down in my assessment the reason for that, and my plan would include the treatment and then have the patient come back to make sure that they were better.

Deposition of Dr. Landgraf at page 146, ln 22-page 147, ln 22.

## SUMMARY JUDGMENT STANDARD

Under Rule 56(c) of the *Federal Rules of Civil Procedure*, summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). "An issue of fact is 'genuine' if the record as a whole could lead a reasonable trier of fact to find for the nonmoving party. An issue is 'material' if it might affect the outcome of the case under the governing law." *Redwing Carriers, Inc. v. Saraland Apartments*, 94 F.3d 1489, 1496 (11th Cir.1996) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986)). "A genuine issue of material fact does not exist unless there is sufficient evidence favoring the nonmoving party for a reasonable jury to return a verdict in its favor." *Chapman v. AI Transp.*, 229 F.3d 1012, 1023 (11th Cir.2000) (en banc) (quoting *Haves v. City of Miami*, 52 F.3d 918, 921 (11th Cir.1995) (internal quotation marks and citations omitted)).

The party seeking summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate

12

the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). The movant can meet this burden by presenting evidence showing there is no dispute of material fact, or by showing the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *Id.* at 322-23, 106 S. Ct. 2548.

Once the moving party has met its burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by [its] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324, 106 S. Ct. 2548. After the nonmoving party responds to the motion for summary judgment, the court must grant summary judgment if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c).

## ARGUMENT

I.  **BAZEMORE AND WAL-MART ARE ENTITLED TO SUMMARY JUDGMENT IN THEIR FAVOR BECAUSE ALABAMA LAW DOES NOT ALLOW RECOVERY IN A MEDICAL MALPRACTICE ACTION BASED UPON A MERE POSSIBILITY OF A BETTER RESULT.**

The claims in this action are governed by the AMLA.

> To establish a cause of action for medical malpractice under the AMLA, a plaintiff must establish, generally by expert testimony: (1) the appropriate standard of care, (2) a breach of that standard of care, and (3) a proximate causal connection between the defendant doctor's act or omission constituting the breach and the injury sustained by the plaintiff.

*Pruitt v. Zeiger*, 590 So. 2d 236, 238 (Ala. 1991); *See also* Ala. Code § 6-5-540 *et seq* (1975).

The causation rule in Alabama for medical malpractice cases is that to find liability there must be more than a mere possibility or one possibility among others that the negligence complained of caused the injury. There must be evidence from expert medical testimony that the negligence **probably** caused the

13

injury. *McAfee v. Baptist Medical Center, et al.*, 641 So. 2d 265, 267 (Ala. 1994); *Hawkins v. Carol*, 676 So. 2d 338, 341 (Ala. Civ. App. 1996); *DCH Health Care Auth. v. Duckworth*, 883 So.2d 1214, 1217 (Ala. 2003).

In *McAfee*, two separate patients filed separate medical malpractice actions against their treating physicians both contending that, because of their physician's failure to recognize, appreciate, and diagnose their medical problems properly, the patients' conditions were worsened. In both of the cases, the trial court granted summary judgment in favor of the respective doctors because the plaintiffs "had failed to present evidence that the alleged negligence of the physicians probably caused the [plaintiff's] injuries." *McAfee*, 641 So. 2d at 266. Both plaintiffs appealed from the trial court's summary judgment and the two cases were consolidated on appeal. *Id.* In affirming the trial court's entries of summary judgment, the *McAfee* court stated the well-established standard in Alabama that "[i]n medical malpractice cases, the plaintiff must prove the alleged negligence 'probably caused the injury.'" *Id.* at 267 (quoting *Parrish v. Russell*, 569 So II.2d 328, 330 (Ala. 1990)). The court went on to quote from *McKinnon v. Polk*, 121 So. 539 (Ala. 1929), as follows:

> The proof must go further than merely show that an injury could have occurred in an alleged way - it must warrant the reasonable inference and conclusion that it did so occur as alleged - and the inference merely that it could so occur does not warrant the conclusion that it did so occur, where from the same proof the injury can with equal probability be attributed to some other cause.

*Id.* at 267.

The plaintiffs in *McAffee* asked the Alabama Supreme Court to abandon the rules of proximate cause cited above and to recognize the "loss of chance doctrine." The Supreme Court rejected this argument and stated that **Alabama law requires that a recovery in a medical malpractice case not**

14

**be based on mere possibility of a better result**. *Id.* "The rule in Alabama medical malpractice cases is that to find liability, there must be more than a mere possibility or one possibility among others that the negligence complained of caused the injury. There must be evidence that the negligence probably caused the injury." *Id.* (citing *Baker v. Chastain*, 389 So. 2d 932, 934 (1980)). It is not necessary to establish that prompt care would have prevented the injury or death of the patient; rather, **the plaintiff must produce evidence to show that her condition was adversely affected by the negligence**." *Parker v. Collins*, 605 So. 2d 824, 827 (Ala. 1992)(emphasis added). The plaintiff must prove all of the above through expert medical testimony. *Id.*(citing *Smith v. Medical Center East*, 585 So. 2d 1325 (Ala. 1991)). Therefore, the Court held that because there was no expert medical testimony that the plaintiffs' conditions had worsened as a direct result of the actions of the defendant physicians, the summary judgments that were granted in favor of the defendant physicians were due to be "affirmed on the authority of *McKinnon v. Polk*, 219 Ala. 167, 121 So. 539 (1929); *Peden v. Ashmore*, 554 So. 2d 1010 (Ala. 1989); *Sasser v. Connery*, 565 So. 2d 50 (Ala. 1990); *Smith v. Medical Center East*, 585 So. 2d 1325 (Ala. 1991); *Parker v. Collins*, 605 So. 2d 824 (Ala. 1992); and *Levesque v. Regional Medical Center*, 612 So. 2d 445 (Ala. 1993)." *Id.* at 268.

In the case at bar, the Plaintiff's evidence falls woefully short of establishing that any alleged negligence by Dr. Bazemore "probably" caused the Plaintiff's injury. The Plaintiff's expert's criticism of Dr. Bazemore's treatment of the Plaintiff is limited to criticizing the instruments and/or procedures utilized by Dr. Bazemore in his glaucoma screening tests. However, the Plaintiff's expert does not and cannot say that, if the instruments advocated by him were used by Dr. Bazemore, that the test results would have been any different. *See* Deposition of Dr. Landgraf at page 134, lns 18-21; page 135, ln 14-page 136, ln 20;

page 140, lns 18-22; page 144, lns 4-16; page 145, lns 9-17; page 146, ln 22-page 147, ln 22. Therefore, in essence, the evidence adduced by the Plaintiff is that if Dr. Bazemore would have performed different tests on the Plaintiff, it is **possible** that his exam findings would have been different, and that he **possibly** should have diagnosed the Plaintiff with glaucoma, or **possibly** should have referred him to an ophthalmologist for further examination. However, as stated in *McAffee*, "Alabama law requires that a recovery not be based on a mere possibility." *McAfee*, 641 So. 2d at 267. Therefore, the Plaintiff has failed to meet his burden and defendants Bazemore and Wal-Mart are entitled to a Summary Judgment.

In another similar case, *Duckworth*, the Alabama Supreme Court reversed and rendered a judgment that had been entered in favor of the plaintiff because "conspicuously absent from the testimony is any opinion as to how [the defendant doctors of which the plaintiff complained of] probably affected the outcome of this case." *Duckworth*, 883 So.2d at 1220. This case relied heavily on *McAfee*.

In this case "conspicuously absent from the testimony is any opinion as to how" Dr. Bazemore's treatment of the Plaintiff affected his outcome in any manner whatsoever. *See Duckworth*, 883 So. 2d at 1220. There is no evidence that the Plaintiff's condition was adversely affected by Bazemore's use of the NCT and slit lamp test instead of the Goldmann's tonometer and gonioscope. The Plaintiff's expert is critical of the instrumentalities used by Dr. Bazemore, but he has not and cannot say that if Dr. Bazemore had used the instrumentalities advocated by him, that the Plaintiff's test results would have been any different. Furthermore, and most importantly, the Plaintiff's expert cannot say that the Plaintiff had glaucoma at any point in Dr. Bazemore's treatment. The AMLA and the cases interpreting that statute hold that such evidence is required, and required to be adduced via expert testimony. Therefore, because there is no such evidence, defendants Bazemore and Wal-Mart are entitled to a Summary Judgment.

## II. BECAUSE WAL-MART HAD NO CONTROL OVER THE MANNER AND METHOD IN WHICH DR. BAZEMORE, A NON-EMPLOYEE, PRACTICED OPTOMETRY, IT HAS ABSOLUTELY NO LIABILITY FOR ANY ALLEGED TORTIOUS CONDUCT COMMITTED BY DR. BAZEMORE.

Wal-Mart is not and cannot be held liable for the conduct of Dr. Bazemore because Dr. Bazemore is nothing more than an independent contractor of Wal-Mart. Dr. Bazemore is not an employee of Wal-Mart. *See* License Agreement at p. 4, attached hereto as Exhibit 7. Specifically, Dr. Bazemore rented approximately 400 square feet of floor space in a Wal-Mart store in which he could operate his optometry business. *See id.* at p. 1. Dr. Bazemore is responsible for and must pay for office supplies, office equipment, diagnostic and therapeutic pharmaceuticals, therapeutic instruments, and custom printed materials for his optometry practice. *See* License Agreement at p. 7. Dr. Bazemore was clearly an independent contractor, rather than an employee. *See id.* at p. 5. Moreover, the License Agreement between Wal-Mart and Dr. Bazemore specifically prohibited Dr. Bazemore from holding himself out to be an employee of Wal-Mart. Therefore, Plaintiff's only theory of liability on behalf of Wal-Mart is whether Wal-Mart held Dr. Bazemore out to a third-party as having authority to act its behalf. *See Malmberg v. American Honda Motor Co.*, 644 So. 2d 888, 891 (Ala. 1994); *see also Glass v. Southern Wrecker Sales*, 990 F. Supp. 1344, 1352 (M.D. Ala. 1998).

In other words, Dr. Bazemore must have had the apparent authority of Wal-Mart. When determining whether the doctrine of apparent authority applies, it is the actions of the principal rather than the agent that are at issue. *See Malmberg*, 644 So. 2d at 891. However, it is important to note that the License Agreement between Dr. Bazemore and Wal-Mart also specifically prohibited Dr. Bazemore from

17

holding himself out to be an agent of Wal-Mart. *See* License Agreement at p. 5. More specifically, in the case of medical providers, the primary question involves whether the claimed principal, in this case Wal-Mart, reserved the right to control the method and manner in which the non-employee, Dr. Bazemore, practiced in his field. *See Brillant v. Royal*, 582 So. 2d 512, 516-17 (Ala. 1991). Wal-Mart most certainly did not reserve the right to control the method and manner in which Dr. Bazemore practiced in the field of optometry. Specifically, the License Agreement provides as follows:

> The relationship between the parties is that of a license. As such, [Wal-Mart] shall retain no control whatsoever over the manner and means by which [Dr. Bazemore] performs his/her work. [None of Dr. Bazemore's] employees shall be entitled to any pension, stock, bonus, profit-sharing, health or similar benefits which are available only to employees of [Wal-Mart]. In addition, [Dr. Bazemore] shall be responsible for the payment of any taxes including without limitation, all federal, state and local personal and business taxes, sales and use taxes, other business taxes and License fees arising out of the activities of [Dr. Bazemore] or its employees.

License Agreement at p. 7. Therefore, Wal-Mart has no liability for any alleged negligent or wanton conduct by Dr. Bazemore, and summary judgment should be entered in its favor.

## **CONCLUSION**

Based on the foregoing, Defendants Dr. Bazemore and Wal-Mart respectfully request that this Court grant their Motion for Summary Judgment and further request that this Court grant such additional relief as it deems just and proper.

Respectfully submitted,

ADAMS, UMBACH, DAVIDSON & WHITE, LLP

BY: _____
PHILLIP E. ADAMS, JR. (ADA025)
BLAKE L. OLIVER (OLI020)

OF RECORD:
Adams, Umbach, Davidson & White, LLP
P. O. Box 2069
Opelika, AL 36803-2069
Tel. (334) 745-6466
Fax (334) 749-3238

## CERTIFICATE OF SERVICE

      I hereby certify that I have on this the 6th day of August, 2007 served a true and correct copy of the above and foregoing Motion for Summary Judgment on the following attorneys of record by United States mail, postage prepaid, at their respective addresses by:

_____      Facsimile transmission;

_____      Hand delivery;

\_\_\_X\_\_\_      Placing a copy of same in the United States Mail, properly addressed and first class postage prepaid to:

| | |
|---|---|
| **Mr. David Adams, Esq.** | **Mr. James Boyd Douglas, Jr., Esq.** |
| **The Newman Law Firm** | **McNeal & Douglas, LLC** |
| **Park Plaza** | **PO Box 1423** |
| **178 South Main Street, Ste. 150** | **Auburn, AL 36830** |
| **Alpharetta, GA 30004** | |

ADAMS, UMBACH, DAVIDSON & WHITE

_/s/ Blake L. Oliver_
Blake L. Oliver

20