# EXHIBIT 3

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | |
|---|---|
| KYLE BENGSTON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| V. | ) 3:06-cv-00569-MEF |
| | ) |
| DAVID BAZEMORE, O.D. et al., | ) |
| | ) |
| Defendants. | ) |

## REPORT OF DEFENDANT'S EXPERT WITNESS (DR. RICHARD MURPHY)

I, Dr. Richard M. Murphy, O.D., am a licensed optometrist in the State of Alabama. My optometry practice is based in Montgomery, Alabama at the Institute for Total Eye Care (ITEC) and I have been employed there since 2000. I have practiced optometry for over 23 years. Therefore, I am extremely familiar with the standard of care that must be employed by optometrists in the State of Alabama. My resume is attached hereto as Exhibit "A" to this report and details my credentials, employment, and military history.

Based upon my review of various office and examination notes of Dr. David Bazemore, O.D., regarding the optometric care he rendered to Mr. Kyle Bengston, Plaintiff in the above-styled cause, coupled with a review of the ophthalmological care rendered to the Plaintiff by Dr. Gregory Sepanski, M.D., I offer the following opinion of the care rendered to the Plaintiff by Dr. Bazemore:

1

Dr. David Bazemore did not breach the applicable standard of care in regards to his treatment of the Plaintiff. On the Plaintiff's visit to Dr. Bazemore on August 20, 2004 (the visit referenced in the Plaintiff's Complaint) Dr. Bazemore took the Plaintiff's Intraocular Pressures ("IOP"). These pressures were well within normal ranges: 13 mmHg in the right eye, and 12 mmHg in the left eye. IOP is the best indicator of problems associated with glaucoma and any measurement of 21 mmHg or below is considered normal. It is quite normal for IOP's to vary from year to year. It is very important to note that at no time during Dr. Bazemore's treatment of the Plaintiff did his IOPs fluctuate above normal ranges.

In addition, there were no findings that might suggest that Mr. Bengston was a suspect of glaucoma such as changes in color vision, changes in central vision, optic nerve head appearance changes, changes in the appearance of the pupils, or any changes in the Plaintiff's confrontational visual fields results. Furthermore, the Plaintiff was a white male in his mid-twenties with no familial history of glaucoma and no history of prior ocular trauma. All of the aforementioned findings remained clinically unchanged over time as evidenced by Dr. Bazemore's file.

On the Plaintiff's August 20, 2004 visit, Dr. Bazemore also conducted a slit lamp examination of the Plaintiff's eyes. These examinations also revealed that the Plaintiff's angles were within normal limits.

On the visit at issue, the Plaintiff complained of seeing halos around lights at night. This

2

complaint could easily be explained by a myriad of causes, including that the Plaintiff had been wearing a toric soft contact lens in his right eye, and a spherical nontoric in his left eye. A toric soft contact lens is significantly thicker than a spherical lens.

I have also reviewed Dr. Landgraf's expert disclosure. I do not agree that the Plaintiff ever had asymmetric and elevated intraocular pressures in the right eye. It is quite normal for IOP's to vary as much as 5 mmHG from year to year, and from time to time during the same day. Furthermore, I do not agree that the proper standard of care for the Plaintiff was to perform a gonioscopy. It is not the standard of care in Alabama to perform a gonioscopy on every patient. Most practicing optometrists use a non-contact tonometer (NCT) in their practices, and use Goldman tonometry as a back-up if IOP's are outside normal ranges, or if other findings as mentioned above warrant such. However, at no visit to Dr. Bazemore by the Plaintiff, did the findings show such a need. In fact, his IOPs were always well within normal ranges on each optometric visit and there were no increased glaucoma risk factors as set out above.

It is my opinion that Dr. Bazemore, like any other practicing optometrist, could not have predicted the tragic sequence of events that lead to the Plaintiff's vision loss. I feel Dr. Bazemore met the standard of care and could not have altered this incident based on clinical data observed, and my review of the Plaintiff's eventual diagnosis.

I reserve the right to amend this opinion and it is subject to further discovery, including the

reading of Dr. Bazemore's deposition, the Plaintiff's expert's deposition, and Defendant's written discovery responses, which are not available at this time.

I may use the following exhibits or a summary of the following exhibits to support my opinions: models of the eye; diagrams of the eye; textbooks and other scholarly articles, specifically including articles from *The Journal of the American Optometric Association*; Dr. Bazemore's file on the Plaintiff; and the Plaintiff's other treating docotors' records.

I have not testified as an expert within the preceding four (4) years.

I have not published any books or articles in the preceding ten (10) years.

My fee for serving Dr. David Bazemore, O.D. as an expert in this matter is $100.00 per hour to review the case and prepare reports, $200.00 per hour for deposition testimony, and $1,000.00 per day for trial testimony.

This 2nd day of May, 2007.

_____
Dr. Richard M. Murphy, O.D.

**DR. RICHARD M. MURPHY, O.D.**          4255 Carmichael Court North
                                         Montgomery, Alabama 36106

---

## EDUCATION

AUBURN UNIVERSITY AT MONTGOMERY, Montgomery, AL
B.S., Secondary Education/ Major Biology, 1975

AUBURN UNIVERSITY AT MONTGOMERY, Montgomery, AL
Masters of Education, Secondary Education/ Major Biology, 1979

UNIVERSITY OF ALABAMA AT BIRMINGHAM SCHOOL OF OPTOMETRY
Birmingham, AL
Doctorate of Optometry, 1984

## EMPLOYMENT

MONTGOMERY COUNTY BOARD OF EDUCATION, Montgomery, AL
Science teacher at Capitol Heights Jr. High School, 1975-1980

U.S. ARMY, Fort McClellon, AL
Army Optometrist, 1984-1988

PRIVATE PRACTICE OPTOMETRY, Montgomery, AL
Optometrist, 1988-2000

INSTITUTE FOR TOTAL EYE CARE, Montgomery, AL
Optometrist, 2000- Present

## MILITARY EXPERIENCE

U.S. AIR FORCE RESERVE, Enlisted, 1969-1975

U.S. AIR FORCE NATIONAL GUARD, 1975-1980

U.S. ARMY RESERVES
Health Professional Scholarship Program
School of Optometry, UAB, 1980-1984

U.S. ARMY, Active Duty, 1984-1988

U.S. ARMY RESERVES, 1988-1993

RETIRED U.S. ARMY RESERVES, 1993