IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | |
|---|---|
| KYLE BENGSTON, ) | |
| ) | |
| PLAINTIFF, ) | |
| ) | |
| v. ) | 3:06-cv-00569-MEF |
| ) | |
| ) | |
| DAVID BAZEMORE, O.D. et. al ) | |
| ) | |
| DEFENDANTS. ) | |

**PLAINTIFF'S BRIEF IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

Comes now the Plaintiff, and herewith files his brief in opposition to Defendant's Motion for Summary Judgment as follows.

**PROCEDURAL HISTORY**

On August 9th, 2006, Plaintiff filed his amended complaint in this action, alleging negligence and wantonness, against Defendant David Bazemore, pursuant to the Alabama Medical Liability Act (hereinafter "AMLA"). Plaintiff also brought the claims against Defendant Wal-Mart Stores, Inc., under the theory of agency. Defendants answered the Complaint on September 1st, 2006. On August 6th, 2007, Defendants filed a Motion for Summary Judgment, and this response follows.

**STATEMENT OF FACTS**

It is undisputed that Kyle Bengston was the patient of Defendant Bazemore from March of 2000 through August of 2004. It is also undisputed that Defendant Bazemore's clinic was located inside Defendant Wal-Mart Stores, Inc.'s facility and Defendant Bazemore's clinic was advertised as the "vision center" within said facility. Furthermore, it

is undisputed that Mr. Bengston, after leaving the care of Defendant Bazemore, suffered severe vision loss, tantamount to being legally blind in his right eye, as a result of subacute angle closure glaucoma.

Glaucoma is a blinding eye disease, and is a leading cause of blindness in the United States. (See Affidavit of Thomas J. Landgraf, O.D., Paragraph 9, Exhibit "A." to Plaintiff's evidentiary submission filed simultaneously herewith. See also Deposition of David Bazemore, O.D., p. 58, l. 19).[1] It is the duty of optometrists in Alabama to know the symptoms of glaucoma and test all patients for glaucoma as part of a routine eye exam in order to diagnose glaucoma. (Ex. "A" ¶ 9; Bazemore, p. 54, ll. 17-21; p. 209, ll. 12-14; p. 226, ll. 6-8).

When Kyle Bengston presented to Defendant Bazemore, at the Wal-Mart Optometry office in Opelika, Alabama, on August 20, 2004, he reported seeing halos around lights and blurry vision, both of which were worse at night. (Bazemore, p. 175, ll. 22-23, p. 176, ll. 1-3). He reported that theses symptoms had been present for about two months and had been getting worse.

His eye exam revealed that his vision in his right eye could not be corrected to 20/20. It was only correctable to 20/25; the exam also revealed a substantial amount of uncorrected vision loss from the previous visit, from 20/50 to 20/100. (Bazemore, p. 181, l. 1. See also exhibit 4 to Defendants' Motion). Despite these complaints, Defendant Bazemore did not utilize proper testing to diagnose Mr. Bengston's condition, nor did he refer Mr. Bengston to an ophthalmologist to receive the required care to prevent his

---

[1] After this initial citation, deposition references will include the deponent's last name only for ease of reference. References to specific paragraphs will be noted with the symbol ¶.

ultimate vision loss. Defendant Bazemore simply told Mr. Bengston to come back to his office in a year. (Bazemore p. 208 ll. 3-14).

Kyle Bengston, in all probability, was suffering from subacute, or intermittent, angle-closure glaucoma at the time of his August 20, 2004, eye exam in Defendant Bazemore's Wal-Mart office. (Affidavit of Gregory J. Sepanski, M.D., Exhibit "B" to Plaintiff's evidentiary submission filed simultaneously herewith;  Affidavit of Phil C. Alabata, D.O., Exhibit "C" to Plaintiff's evidentiary submission filed simultaneously herewith; Exhibit "A" ¶ 10).

Defendants' Motion for Summary Judgment fails to differentiate the different types of glaucoma, which is essential to appreciating Defendant Bazemore's failures in treating Mr. Bengston. One type of glaucoma is angle-closure glaucoma. This type of glaucoma occurs when the angle of the eye is closed and the flow of fluid within the eye is disrupted, resulting in pressure within the eye. Elevated pressure within the eye, or elevated intraocular pressure, is glaucoma. The elevated pressure within the eye results in nerve damage and a loss of visual field, thus, a loss of vision. (Ex. "A" ¶ 9). Angle-closure glaucoma, the type which afflicted Mr. Bengston, is a medical emergency, requiring that the optometrist refer the patient to an ophthalmologist for proper treatment. (Bazemore p. 100, ll. 17-23).

This type of glaucoma must be treated with laser or surgical intervention, and the care of patients suffering from angle-closure glaucoma must be managed by an ophthalmologist. Because optometrists do not perform surgery and because angle-closure glaucoma must be managed by an ophthalmologist, it is the duty of an optometrist to refer any patient suspected of suffering from this disease to an

ophthalmologist. (Exhibit "A" ¶ 9; Bazemore, p. 95, ll. 12-17; p. 128, ll 22-23; p. 100, ll. 17-18; p. 74, ll. p. 122, ll. 18-22).

Angle-closure glaucoma can either be acute or subacute. Subacute angle-closure glaucoma is characterized by intermittent episodes of angle-closure, or glaucoma attacks, and is also known as intermittent angle-closure glaucoma. (Exhibit "A" ¶ 9). These episodes of high intra-ocular pressure are caused by the closing of the eye's angle, and are typically worse when the sufferer is tired or stressed. (Exhibit "A" ¶ 9).

Patients suffering from subacute angle-closure glaucoma commonly describe symptoms such as seeing halos around lights, blurry vision, and a loss of vision, the same complaints made by Mr. Bengston on August 20th 2004. Sufferers commonly describe these symptoms as being worse at night. (Exhibit "A" ¶ 9; Bazemore, p. 117, ll. 15-23; p. 189, ll. 14-17).

It is the duty of optometrists practicing in Alabama to recognize the signs and symptoms of subacute angle-closure glaucoma, and optometrists in Alabama possessed said duty on August 20, 2004. (Exhibit "A" ¶ 10; Bazemore, p. 209, ll. 12-14; p. 116, ll. 18-20; p. 54, ll. 17-20).

When presented with a patient who reports seeing halos around lights, reports blurry vision, and whose tests reveal a loss of visual acuity, it is the duty of the optometrist to conduct appropriate testing. (Exhibit "A" ¶ 9). These tests include obtaining the best possible view of the angle of the eye and obtaining the most accurate reading of intra-ocular pressure. (Exhibit "A" ¶ 9).

Gonioscopy is a test used to view the angle of the patient's eye, and it offers a better view of the angle than the slit lamp exam, another test used to view the angle of the

patient's eye, which was used by Defendant Bazemore with Mr. Bengston. (Exhibit "A" ¶ 9; Bazemore, p. 125, ll. 15-16). The most accurate reading of intra-ocular pressure is obtained though the use of contact tonometry. (Exhibit "A" ¶ 9).

When presented with a patient who reports seeing halos around lights, reports blurry vision, and whose tests reveal a loss of visual acuity, it is the duty of the optometrist to refer the patient to an ophthalmologist for an ophthalmic assessment. (Exhibit "A" ¶ 9; Bazemore, p. 131, ll. 11-14).This duty remains regardless of whether the patient is experiencing a glaucoma attack, with high intra-ocular pressure, or intermittent episode of high intra-ocular pressure, at the time of his optometry exam.

The nature of subacute angle-closure glaucoma is that it is intermittent, it comes and goes. (Exhibit "A" ¶ 9). Optometrists are required to recognize its symptoms and refer patients suspected of this blinding disease to an ophthalmologist for an ophthalmic assessment. (Exhibit "A" ¶ 9; Bazemore, p. 95, ll. 12-17; p. 128, ll. 22-23; p. 100, ll. 17-18; p. 74, ll. 19-22; p. 122, ll. 18-22).

Undisputedly, Defendant Bazemore did not view Mr. Bengston's eyes using a gonioscope and did not measure the intra-ocular pressure of his eyes with Goldmann's tonometry. (Bazemore, p. 188, ll 5-9). Defendant Bazemore also failed to refer Mr. Bengston to an ophthalmologist, but, as stated earlier, simply told him to return in one year. (Bazemore, p. 208, ll. 3-14).

In February of 2005, Mr. Bengston's family physician, Dr. Reid Cooper, referred him to an Ophthalmologist, Dr. Gregory J. Sepanski, M.D. At Mr. Bengston's initial visit to Dr. Sepanski's office on March 7, 2005, he had subacute angle-closure glaucoma. (Exhibit "B" ¶ 2). Because his glaucoma had gone untreated for several months, Mr.

Bengston had severe damage to his optic nerve, an afferent pupilary defect and substantial vision loss. (Exhibit "B" ¶ 2). Mr. Bengston is blind today in his right eye, due to the failure of Defendant Bazemore to conduct proper tests and to promptly refer Mr. Bengston to an Ophthalmologist for treatment, when being presented with the typical symptoms of angle closure glaucoma. (Exhibit "B" ¶ 2; Exhibit "A" ¶ 10, 11).

If Mr. Bengston had been referred to an ophthalmologist by Defendant Bazemore on August 20, 2004, Kyle Bengston's vision loss would have, in all probability, been prevented. (Exhibit "B" ¶ 2; Exhibit "A" ¶ 11).

## ARGUMENT

Summary judgment is only appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). After the moving party informs the court of the basis for the motion, the burden then shifts to the non-moving party to demonstrate why summary judgment would not be proper. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). The non-moving party must affirmatively set forth the specific facts showing a genuine issue for trial. Fed. R. Civ. P. 56(e).

The court must view all the evidence in the light most favorable to the non-movant and draw all reasonable inferences in favor of that party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574 (1986). The court is not to weigh the evidence or to determine the truth of the issues but only determine whether a genuine issue exists for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). As a genuine issue of material fact exists as to whether Defendants breached the applicable standard of care,

which caused Mr. Bengston's injuries, Defendants' Motion for Summary Judgment is due to be denied.

As stated earlier, this action is a case of medical malpractice, and is governed by the AMLA. In order to sustain a claim under AMLA, the Plaintiff must prove, through expert testimony, that the healthcare provider, "breached the standard of care and by the breach proximately caused the Plaintiff's injury." The University of Alabama Health Services Foundation, P.C. v. Bush, 638 So.2d 794, 798 (Ala. 1994), quoting Levesque v. Regional Medical Center Bd, 612 So.2d 445, 448 (Ala. 1993) and Dobbs v. Smith, 514 So.2d 871 (Ala. 1987).

> **A. Plaintiff has presented substantial evidence that Defendant Bazemore breached the applicable standard of care in treating Mr. Bengston.**

The argument portion of Defendants' brief relies exclusively on the contention that the Plaintiff has failed to present evidence that Defendant Bazemore's breach of the standard of care probably caused Mr. Bengston's injuries, as the basis for this Court to grant their Motion for Summary Judgment. As such, little discussion is required regarding Defendant Bazemore's breach of the standard of care in treating Mr. Bengston. However, Defendants do attach affidavits, of two optometrists, who testify that the standard was met by Defendant Bazemore. (See exhibits 2 and 3 to Defendants' Motion).

Those affidavits are contradicted by the report of Dr. Landgraf (Exhibit 5 to Defendants' Motion) and the affidavit of Dr. Landgraf, filed simultaneous with this response as exhibit "A" to Plaintiff's evidentiary submission. As stated earlier, Dr. Landgraf, a licensed optometrist, makes clear that Defendant Bazemore breached the applicable standard of care by failing to perform the proper tests for angle closure

glaucoma, after being presented with the classic symptoms thereof, and by failing to refer Mr. Bengston to an ophthalmologist for management of his condition after he presented with said symptoms on August 20, 2004. The reports of Defendants' experts, which take issue with Dr. Landgraf's conclusions, demonstrate that genuine issues of fact exist, which preclude granting Summary Judgment.

Also, Defendants mischaracterize Dr. Landgraf's opinion regarding the failure of Defendant Bazemore to refer Mr. Bengston to an ophthalmologist. Defendants argue that Dr. Landgraf cannot determine what any test results would have revealed, had Defendant Bazemore used the proper tests, therefore, it is speculation as to whether a referral would have occurred, even if the proper tests were conducted.

Dr. Landgraf's position, however, as made clear in his report (Exhibit 5 to Defendants' Motion), his deposition (Exhibit 6 to Defendants' Motion), and his affidavit (Exhibit "A" to Plaintiff's evidentiary submission) is that the standard of care required a referral by Defendant Bazemore, based on the symptoms Mr. Bengston presented with on August 20th, 2004. Loss of vision, blurriness of vision, and seeing halos around lights, all of which had persisted over a prolonged period of time, required that Defendant Bazemore refer Mr. Bengston to an ophthalmologist immediately, which he failed to do, therby breaching the standard of care.

**B. Plaintiff has presented substantial evidence that Defendant Bazemore's breach of the standard of care probably caused Mr. Bengston's injuries.**

As previously stated, a plaintiff in a medical malpractice case must prove that the alleged negligence "probably caused, rather than only possibly caused, the plaintiff's injury. Bush at 802, quoting Willard v. Perry, 611 So.2d 358 (Ala. 1992); Pedan v. Ashmore, 554

So.2d 1010 (Ala. 1989). In the case sub judice, the Plaintiff has proved, through the affidavit of Dr. Gregory Sepanski, Mr. Bengston's treating ophthalmologist, that Mr. Bengston was, in all probability, suffering from subacute angle closure glaucoma on August 20th, 2004, while being treated by Defendant Bazemore. (See Exhibit "B").

Dr. Sepanski further concludes that, had Mr. Bengston been referred for ophthalmic evaluation on August 20th, 2004, Mr. Bengston's vision loss, in all likelihood, would have been prevented. (See Exhibit "B"). As "likely" and "probable" are synonyms, according to any thesaurus, the Plaintiff has proved, through expert testimony, that Defendant Bazemore failed to properly diagnose and treat Mr. Bengston's condition, and that said failure probably caused Mr. Bengston's vision loss. This is all that is required, under AMLA, to defeat Defendants' Motion for Summary Judgment.

Defendants' reliance on McAfee v. Baptist Medical Center, et. al., 641 So.2d 265 (Ala. 1994); Hawkins v. Carol, 676 So.2d 338 (Ala. Civ. App. 1996); DCH Health Care Auth. v. Duckworth, 883 So.2d 1214 (Ala. 2003) is misplaced in that all those cases involve the failure of the plaintiff to prove probable causation through expert testimony. In this case, Mr. Bengston has proven probable causation through the affidavits of both Dr. Sepanski, as just discussed, as well as the affidavit of Dr. Phil Alabata, exhibit "C" to Plaintiff's evidentiary submission, which also states that Mr. Bengston "probably" was suffering from intermittent angle closure glaucoma at the time of the August 20th, 2004 visit.

This case is much more analogous to Bush, wherein the Alabama Supreme Court held that the plaintiff had proved that the failure of a physician to diagnose Hemophilus Influenza Meningitis proximately caused the minor's injuries. Bush at 804. The Alabama Supreme Court held that the testimony of the plaintiff's expert was sufficient to show the

required causation. Id at 802,803.  Likewise in this matter, the testimony of Drs. Sepanski and Alabata are sufficient to show causation.  (See also Travis v. Scott, 667 So.2d 674, 678 (Ala.1995), where the plaintiff's expert testified that if surgery had been performed on the decedent two days after she was admitted to the hospital, rather than eight days after admission, she "probably would have survived.")

In cases like the one sub judice, which involve dilatory diagnosis and treatment, the case may be submitted to the jury if the plaintiff proves prompt diagnosis and treatment would have placed him in a "better position" than the inferior medical care placed him in.  Duckworth, at 1217, quoting Parker v. Collins, 605 So.2d 824, 827 (Ala. 1992).  The affidavit of Dr. Sepanski goes beyond that requirement in stating that Mr. Bengston's vision loss would have been prevented, in all likelihood, had Defendant Bazemore followed the standard of care and referred Mr. Bengston to an ophthalmologist. (Exhibit "B").

Contrary to the repeated contention in Defendants' Motion, the Plaintiff does not have to prove that the injury would not have occurred to prove causation.  See Parker at 827.  The Plaintiff need only show that his condition was adversely affected by the negligence.  Id.  However, Mr. Bengston has carried this higher burden through the testimony of Dr. Sepanski.  As Plaintiff has produced substantial evidence that the negligence of Defendant Bazemore probably caused Mr. Bengston's injuries, Defendants' Motion for Summary Judgment is due to be denied on causation grounds.

**C. Under agency principles, Defendant Bazemore had the apparent authority to bind Defendant Wal-Mart Stores, Inc. by his actions.**

Defendants argue that, notwithstanding the medical malpractice issues involving Defendant Bazemore, that Defendant Wal-Mart Stores, Inc. should be granted Summary Judgment because it is not responsible, under agency principles, for Defendant Bazemore's actions. Defendants' brief properly frames the issue as one of apparent authority. Apparent authority exists when the purported principle, Wal-Mart in this case, holds out the purported agent as someone who has the authority to act on behalf of the principle, even if the purported agent lacks the actual authority to do so. See John Deere Construction Equipment Company v. England, 833 So.2d 173, 179 (Ala. 2003).

As stated earlier, it is undisputed that Defendant Bazemore's business is contained inside the Wal-Mart facility. More importantly, it is undisputed that the business is marketed to the public as the Wal-Mart vision center, including being found in the telephone directory under Wal-Mart's listing. (See also exhibit 7 to Defendant's Motion). Clearly, Wal-Mart is holding out Defendant Bazemore as someone who can act on their behalf in the performance of his optometrist duties as contemplated in the England case.

In Goodyear Tire & Rubber Co. v. Washington, 719 So.2d 774 (Ala. 1998), the Alabama Supreme Court held that the plaintiff had proved that Goodyear had given apparent authority to another company which held itself out as a Goodyear agent to the public, with Goodyear's permission. Washington at 777. By allowing the public to think that Defendant Bazemore's business was part of Wal-Mart, as a part of it store with its own title, the vision center, Defendant Wal-Mart, like Goodyear, gave apparent authority to Bazemore and is thereby bound by his actions in this matter.

Lastly, it is important to point out that agency is a question of fact for the jury to determine. See Oliver v. Taylor, 394 So.2d 945 (Ala. 1981). Surely a jury could determine,

when viewing the facts in a light most favorable to the Mr. Bengston, that Wal-Mart had held Defendant Bazemore out to the public as its agent, providing eye care in its vision center. As such, Defendant Wal-Mart's Motion for Summary Judgment, on agency principles, is due to be denied.

## CONCLUSION

Based on the forgoing, Plaintiff respectfully requests that this Honorable Court deny Defendants' Motion for Summary Judgment.

Respectfully submitted this 21st day of August, 2007.

__/s/ James B Douglas Jr.__
James B. Douglas, Jr.
Attorney for Plaintiff
P.O. Box 1423
Auburn, AL  36831-1423
(334) 821-1596
Ala Bar No. 8935-u83j

## CERTIFICATE OF SERVICE

I hereby certify that I have served a copy of the above on all parties of record by use of this Court's electronic filing system on this the 21st day of August, 2007.

__/s/ James B Douglas Jr._
James B. Douglas, Jr.

Phillip Adams
Matthew White
Blake L. Oliver
Adams, Umbach, Davidson & White, LLP
205 South 9th Street
Opelika, Alabama 36801