IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | |
|---|---|
| KYLE BENGSTON, ) | |
| ) | |
| PLAINTIFF, ) | |
| ) | |
| v. ) | 3:06-cv-00569-MEF |
| ) | |
| ) | |
| DAVID BAZEMORE, O.D. et. al ) | |
| ) | |
| DEFENDANTS. ) | |

**PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION TO STRIKE THE AFFIDAVIT OF DR. THOMAS J. LANDGRAF**

Comes now the Plaintiff, and herewith files his response and objection to the Defendants' Motion to Strike portions of the affidavit of Dr. Thomas J. Landgraf. First, Plaintiff would argue that this Motion to Strike be denied as moot. As the affidavits of Drs. Alabata and Sepanski are not due to be struck, (see opposition to that motion filed simultaneously herewith), they create a genuine issue of material fact which mandates the denial of Defendants' Motion for Summary Judgment. Therefore, this Motion to Strike would be moot and due to be denied on those grounds. In further support of this response, Plaintiff would state to this Honorable Court as follows.

1. Defendants filed a Motion for Summary Judgment in this matter, based **only** on the argument that Plaintiff, Mr. Kyle Bengston, had not demonstrated causation between the breach of standard of care by Defendant Bazemore and the injuries sustained by Mr. Bengston. (See Doc. # 37).

2. The Plaintiff filed a Brief in Opposition to the Motion as well as an Evidentiary Submission (Doc. #'s 40 and 41 respectively) which, unquestionably, demonstrated that a

genuine issue of material fact exists as to whether the breach of standard by Defendant Bazemore caused the injuries to Mr. Bengston, thereby necessitating the denial of Defendants' Motion for Summary Judgment.

3. Dr. Thomas J. Landgraf, a retained expert in this matter, provided a report to the Defendants and sat for deposition. In addition to that testimony, Dr. Landgraf provided an affidavit which was filed as part of Plaintiff's evidentiary submission in opposition to Defendant's Motion for Summary Judgment. (See Doc. #41 Ex. A).

4. Defendants now seek to have that affidavit struck as a "sham" affidavit. (Doc.# 46). It should be initially noted that the only part of Dr. Landgraf's deposition Defendants contend are in conflict with his affidavit is his answer, in his deposition, that he did not know if Mr. Bengston had glaucoma on August 20th 2004. ( See Landgraf depo. p. 157, ll. 15-19). Dr. Landgraf only devotes two lines in his affidavit which arguably relate to this issue (See Doc. #41 Ex. A page 8, lines 7 and 8). The remainder of the affidavit is, undisputedly, consistent with his deposition testimony and Defendants make no argument that the remainder of his affidavit should be struck on the grounds that it is a "sham."

5. In Dr. Landgraf's affidavit, he makes clear that, "No testimony contained herein is given for the purpose of changing or correcting my previous testimony…{T}his testimony is simply provided as a supplement to my deposition testimony for the purpose of …covering areas that were not adequately addressed by defense counsel during my deposition."

6. In Dr. Landgraf's deposition, he was not asked, by defense counsel, about subacute angle closure glaucoma. The affidavit (Doc. #41 Ex. A) distinguishes subacute angle closure glaucoma as a situation where the "glaucoma attacks" are intermittent, which is why

it is also known as intermittent angle closure glaucoma, from glaucoma, itself, which is simply elevated intraocular pressure of the eye. Therefore, even though he cannot say whether Mr. Bengston was in the middle of a "glaucoma attack" on August 20th, 2004, Dr. Landgraf can say, based on Mr. Bengston's other symptoms, that he was suffering from subacute angle closure glaucoma on that day, and that Defendant Bazemore failed to diagnose it and failed to refer Mr. Bengston to an ophthalmologist, pursuant to the applicable standard of care.

7. As Dr. Landgraf was not asked about subacute angle closure glaucoma, and the nature of its intermittent attacks, it cannot be successfully argued that the deposition testimony is contradicted by the affidavit. A witness need not expand on a deposition answer to make it clearer to the questioner; the witness is simply required to answer the question truthfully. Had Dr. Landgraf been asked about subacute, or intermittent, angle closure glaucoma, and its nuances regarding the intermittent attack issue, he would have testified consistent with the affidavit, and the affidavit, in all likelihood, would not have been necessary.

8. It would be inappropriate to strike Dr. Landgraf's affidavit because the questions, which would have yielded the same testimony as the affidavit, were not asked. Actually Dr. Landgraf attempted to assist Defendants' counsel in understanding the differences of angle closure glaucoma on a couple of occasions. "Q: So you agree that it's angle-closure glaucoma? A: That it's some type of angle-closure glaucoma." (Landgraf p. 139, ll. 4,5). The next possible question, namely, what type of angle closure glaucoma, was never asked. "Q: Do you recall whether he was ever diagnosed with acute angle-closure glaucoma? A: I

think he was diagnosed with intermittent angle-closure glaucoma." (Landgraf p.100,101). Again, no follow up questioning was done regarding the difference.

9. On two other occasions, Dr. Landgraf explained the intermittent nature of Mr. Bengston's disease. (Landgraf p. 135,140). This testimony was consistent with the affidavit which was filed. Dr. Landgraf made clear in his deposition that the intermittent nature of the disease would mean that the pressure measured on any particular day may be elevated or may be normal, which is why Defendant Bazemore breached the standard of care by not utilizing instrumentation that would have shown him the entire angle of the eye.

10. The intermittent nature of the attacks involved with patients who suffer from subacute angle closure glaucoma mandated that Dr. Landgraf answer counsel's question regarding glaucoma on August 20th 2004 the way he did. Had the question been posed as subacute or intermittent angle closure glaucoma, then the answer would have been identical to the affidavit.

11. Due to the complicated nature of this subject matter, Plaintiff files another affidavit, in support of this response and attached hereto as Exhibit "A," which seeks to further clarify this issue. This affidavit reiterates that although Dr. Landgraf cannot say if the intraocular pressure, or glaucoma, was elevated on August 20th, 2004, he can state, consistent with all his earlier testimony, that Mr. Bengston did have subacute angle closure glaucoma, "attacks that come and go" on that date, based on his symptoms at the time.

12. Finally, the affidavit issued in the evidentiary submission was consistent with the report of Dr. Landgraf (See Doc. #46 attachment 2), in that Dr. Landgraf explains how Defendant Bazemore breached the standard by using improper equipment and failing to refer Mr. Bengston to an ophthalmologist for surgical intervention. The report also states

that the symptoms were "highly indicative" of the disease which eventually cost Mr. Bengston his right eye.

13.     In short, the affidavit submitted was not a "sham" and not inconsistent with the deposition testimony given. The perceived inconsistency was the product of the failure of Defendants to differentiate between the different types of glaucoma and ask the questions accordingly.

       Respectfully submitted this 10th day of September, 2007.

                                      __/s/ James B Douglas Jr.__
                                      James B. Douglas, Jr.
                                      Attorney for Plaintiff
                                      P.O. Box 1423
                                      Auburn, AL  36831-1423
                                      (334) 821-1596
                                      Ala Bar No. 8935-u83j

## CERTIFICATE OF SERVICE

       I hereby certify that I have served a copy of the above on all parties of record by use of this Court's electronic filing system on this the 10th day of September, 2007.

                                      __/s/ James B Douglas Jr._
                                      James B. Douglas, Jr.

Phillip Adams
Matthew White
Blake L. Oliver
Adams, Umbach, Davidson & White, LLP
205 South 9th Street
Opelika, Alabama 36801