**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF ALABAMA**
**EASTERN DIVISION**

| | |
|---|---|
| **KYLE BENGSTON,** | ) |
| | ) |
|     **Plaintiff,** | ) |
| | ) |
| **vs.** | )    3:06-cv-00569-SRW |
| | ) |
| **DAVID BAZEMORE, O. D., AND** | ) |
| **WAL-MART STORES, INC.,** | ) |
| | ) |
|     **Defendants.** | ) |

**REPLY TO PLAINTIFF'S RESPONSES**
**TO DEFENDANTS' MOTIONS TO STRIKE THE AFFIDAVITS**
**OF DRS. LANDGRAF, ALABATA, AND SEPANSKI**

COME NOW David Bazemore, O.D., and Wal-Mart Stores, Inc. (hereinafter referred to collectively as the "Defendants"), by and through their undersigned attorneys, and in reply to the Plaintiff's responses to their motions to strike the affidavits of Drs. Landgraf, Alabata, and Sepanski say and state as follows:

**I. Dr. Landgraf**

First and foremost, even if this Court accepts Dr. Landgraf's affidavit as proper evidence, the Plaintiff has still not adduced any evidence whatsoever that if Dr. Bazemore had utilized the instruments and procedures advocated by Dr. Landgraf, the test results would have been any different. Therefore, there is no evidence whatsoever of causation and the Defendants' Motion for Summary Judgment is due to be granted.

In Plaintiff's Response to Defendants' Motion to Strike the Affidavit of Dr. Thomas J. Landgraf and the accompanying affidavit, the Plaintiff argues that Dr. Landgraf's affidavit should

not be stricken as a sham affidavit because Dr. Landgraf was not asked specifically about "subacute angle-closure" glaucoma at his deposition. The Plaintiff and Dr. Landgraf go on to argue that if he had been asked this specific question in those specific words that he would have answered that question in the same manner that he testified to in his affidavit. Arguments such as these are exactly the hide the ball tactics that Rule 26 of the *Federal Rules of Civil Procedure* and the case law on sham affidavits disallow. By the Plaintiff's own admission, "[o]ne type of glaucoma is angle-closure glaucoma." Affidavit of Thomas J. Landgraf, D.O., attached to the Plaintiff's brief in opposition to Defendants' Motion for Summary Judgment at p. 4. At his deposition, the Plaintiff was directly asked whether the Plaintiff had "angle-closure glaucoma" on August 20, 2004 to which he replied "I don't know." Depo. of Dr. Landgraf at p. 157, lns. 15-19. The question cannot get any more direct and Dr. Landgraf's answer could not be any clearer. Based on the foregoing, any testimony by Dr. Landgraf stating any opinion on whether the Plaintiff had angle-closure glaucoma on the date he last saw Br. Bazemore is testimony "that merely contradicts, without explanation, previously given clear testimony," and is, thus, sham testimony and a fraud on this Court. *See Van. T. Junkins & Assocs., Inc. v. U.S. Indus., Inc.*, 736 F.2d 656, 657 (11th Cir. 1984). Accordingly, any such testimony should be stricken.

As stated above, Dr. Landgraf overtly complains that Defendants did not ask the right questions. To the contrary, Dr. Landgraf did not disclose the proper information. Plaintiff had an affirmative duty to disclose Dr. Landgraf's entire opinion in his initial report. The purpose behind doing so is to allow the Defendants the opportunity to ask Dr. Landgraf questions about his entire opinion at his deposition. Pursuant to Rule 26(a)(2)(B), an expert report "shall contain a complete statement of all opinions to be expressed and the basis and reasons therefor. . . ." Dr. Landgraf's

initial "Expert Witness Report," attached hereto as Exhibit A, says nothing about "chronic" or "sub-acute" or "intermittent" angle-closure glaucoma. It refers only to "angle-closure glaucoma." Thus, the question was phrased in terms of angle-closure glaucoma at deposition.

Further, Dr. Landgraf's initial report offers <u>no opinion</u> as to whether the Plaintiff was suffering from angle-closure glaucoma at the time of the Plaintiff's last visit to Dr. Bazemore on August 20, 2004. Dr. Landgraf's initial report says, in essence, that Dr. Bazemore failed to perform certain tests that may have detected glaucoma if it existed. No opinion is offered as to causation. It is only in Dr. Landgraf's second and third affidavits, filed after Defendant's Motion for Summary Judgment, that Dr. Landgraf now opines that Plaintiff was "in all probability suffering from sub-acute angle-closure glaucoma at the time of his August 20, 2004 optometry exam." *See* Affidavit of Thomas J. Landgraf, O.D. filed August 21, 2007. If this is, in fact, Dr. Landgraf's true opinion, this is precisely the information that he was required to disclose in his initial expert witness report which was due February 28, 2006 pursuant to this Court's Scheduling Order.

Based on the foregoing, and the reasons stated in the Defendants' previously-filed Motion to Strike, the affidavits of Dr. Landgraf filed after Defendants' Motion for Summary Judgment are due to be stricken.

## II.  Drs. Alabata and Sepanski

Similarly to the affidavits of Dr. Landgraf, even if this Court accepts Drs. Alabata and Sepanski's affidavits as proper evidence, the Plaintiff has not adduced any evidence whatsoever that if Dr. Bazemore had utilized the instruments and procedures advocated by the Plaintiff, the test results would have been any different. Therefore, there is no evidence of causation, and the

Defendants' Motion for Summary Judgment is due to be granted.

The Plaintiff argues among other things that he was under no duty to disclose an expert report for Drs. Alabata and Sepanski because they were disclosed by both parties as possible expert witnesses in the parties' expert disclosures. The Plaintiff is correct in his assertion that both doctors were listed indirectly as expert witnesses by both parties due to their capacities as treating physicians. However, the Alabata and Sepanski affidavits go much further than mere testimony regarding the two doctors' treatment of the Plaintiff. The affidavits actually advocate for the Plaintiff's position in preparation for trial. This type of expert testimony is the type of testimony that the drafters of the *Federal Rules of Civil Procedure* contemplated as required to be disclosed in Rule 26. Indeed, the Advisory Committee's Explanatory Statements Concerning 1970 Amendments to Discovery Rules note the distinction between an expert

> whose information was not acquired in preparation for trial but rather because he was an actor or viewer with respect to transactions or occurrences that are part of the subject matter of the lawsuit. Such an expert should be treated as an ordinary witness.

Fed. R. Civ. P. 26 (Comm. Notes).

In this case, until their most recent affidavits, Defendants had no reason to believe that Drs. Alabata and Sepanski would offer testimony other than that of a treating physician, and were merely being disclosed as experts because of their capacities as "actors or viewers with respect to transactions or occurrences that are a part of the subject matter of" this lawsuit, especially in light of the fact that no expert reports were disclosed from either of the gentlemen. Fed. R. Civ. P. 26 (Comm. Notes). This belief was compounded by the fact that much time had elapsed between the Plaintiff's last visit with Dr. Bazemore and Plaintiff's initial visits with Drs. Alabata and Sepanski --

approximately seven months in the case of Dr. Sepanski, and approximately two and one-half years in the case of Dr. Alabata.

The Affidavits of Drs. Alabata and Sepanski clearly go well beyond testimony of a mere treating physician. As is obvious from the face of the affidavits, both Drs. Alabata and Sepanski reviewed Dr. Bazemore's file, Dr. Reid Cooper's file, and various other doctor's file materials in formulating their opinion that their patient "probably" had a certain condition at some point in time prior to their treatment of said patient. Quite frankly, it would be surprising if Drs. Alabata and Sepanski gave such an opinion without being compensated therefor. However, because they have not been disclosed as retained experts in this matter, their depositions have not been taken at this time.

Perhaps most importantly, Defendants propounded interrogatories and request for production of documents to Plaintiff early on in this matter. *See* Exhibit B, attached hereto. Interrogatory number 3 asks the Plaintiff to

> identify each person you expect to call as an expert witness at trial and please indicate, as to each such person: (a) the subject matter on which the expert is expected to testify; (b) the substance of the facts and opinions to which each such person is expected to testify and a summary of the grounds for each opinion.

Plaintiff responded as follows: "Plaintiff has not yet determined who he will call as an expert witness at trial. Plaintiff will timely supplement his response to this interrogatory." *See* Exhibit C, attached hereto. This response was served on Defendant on November 17, 2006. Defendant's interrogatory to Plaintiff did not request simply the opinions of "retained" experts, but requested the information from "each" expert. To date, Plaintiff has never seasonably updated his discovery responses, and has never provided Defendant with any opinions held by Drs. Alabata or Sepanski, other than the

Affidavits filed with this Court in opposition to Defendant's Motion for Summary Judgment.

WHEREFORE, for the reasons cited herein and the reasons stated in the Defendants' previously-filed Motion to Strike, the affidavits of Drs. Alabata and Sepanski are due to be stricken.

RESPECTFULLY SUBMITTED this the 14th day of September, 2007.

        ADAMS, UMBACH, DAVIDSON & WHITE, LLP

        /s/ Matthew W. White
        PHILLIP E. ADAMS, JR. (ADA025)
        MATTHEW W. WHITE (WHI086)
        BLAKE L. OLIVER (OLI020)
        Attorney for Defendants
        P.O. Box 2069
        Opelika, Alabama  36803-2069
        (334) 745-6466

## CERTIFICATE OF SERVICE

      I hereby certify that I have on this the 14th day of September, 2007 served a true and correct copy of the above and foregoing Motion for Summary Judgment on the following attorneys of record by United States mail, postage prepaid, at their respective addresses by:

_____      Facsimile transmission;

_____      Hand delivery;

  X      Placing a copy of same in the United States Mail, properly addressed and first class postage prepaid to:

| | |
|---|---|
| **Mr. David Adams, Esq.** | **Mr. James Boyd Douglas, Jr., Esq.** |
| **The Newman Law Firm** | **McNeal & Douglas, LLC** |
| **Park Plaza** | **PO Box 1423** |
| **178 South Main Street, Ste. 150** | **Auburn, AL 36830** |
| **Alpharetta, GA 30004** | |

                                 ADAMS, UMBACH, DAVIDSON & WHITE

                                 /s/ Matthew W. White
                                 Of Counsel