IN THE UNITED STATES DISTRICT COURT FOR
THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | |
|---|---|
| KYLE BENGSTON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CASE NO. 3:06-cv-569-MEF |
| ) | |
| DAVID BAZEMORE, O.D., and ) | |
| WAL-MART STORES, INC., ) | |
| ) | |
| Defendants. ) | |

## **MEMORANDUM OPINION AND O R D E R**

### I. INTRODUCTION

This cause is before the Court on Defendants' Motion for Summary Judgment (Doc. # 37). This case arose out of Plaintiff's vision loss in his right eye. Plaintiff alleges that Defendant Dr. David Bazemore ("Dr. Bazemore") failed to diagnose Plaintiff with glaucoma and failed to refer Plaintiff to an ophthalmologist. Plaintiff brings claims against Defendants for negligence and wantonness. This motion presents two issues: (1) whether Dr. Bazemore's failure to refer Plaintiff to an ophthalmologist caused Plaintiff's injury, and (2) whether Defendant Wal-Mart Stores, Inc. ("Wal-Mart") can be liable for Bazemore's action under the doctrine of apparent authority. For the reasons set forth in this Memorandum Opinion and Order, the motion is due to be GRANTED in part and DENIED in part.

## II. JURISDICTION

This Court has subject matter jurisdiction under 28 U.S.C. § 1332 because Plaintiff is a resident of Florida, Dr. Bazemore is a resident of Alabama, and Defendant Wal-Mart is a Delaware corporation. Plaintiff's First Amended Complaint (Doc. # 12, ¶¶ 2-4).[1] The parties do not contest personal jurisdiction or venue, and the Court finds a sufficient factual basis for each.

## III. STANDARD OF REVIEW

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "An issue of fact is 'genuine' if the record as a whole could lead a reasonable trier of fact to find for the nonmoving party. An issue is 'material' if it might affect the outcome of the case under the governing law." *Redwing Carriers, Inc. v. Saraland Apartments*, 94 F.3d 1489, 1496 (11th Cir. 1996) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

The party asking for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of

---

[1] The Defendants deny that the Court has subject matter jurisdiction. Answer to Plaintiff's First Amended Complaint (Doc. # 20, ¶ 1). However, Defendants did not submit evidence or legal argument to support this position. From what is before the Court, it appears that there is subject matter jurisdiction.

'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323. The movant can meet this burden by presenting evidence showing there is no dispute of material fact, or by showing the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *Id.* at 322-23.

Once the moving party has met its burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324. To avoid summary judgment, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). On the other hand, a court ruling on a motion for summary judgment must believe the evidence of the nonmovant and must draw all justifiable inferences from the evidence in the nonmoving party's favor. *Anderson*, 477 U.S. at 255. After the nonmoving party has responded to the motion for summary judgment, the court must grant summary judgment if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c).

### IV. FACTS AND PROCEDURAL BACKGROUND

The Court has carefully considered all depositions, affidavits, and other documents

submitted in support of and in opposition to the motion.  First, the Court will summarize the Plaintiff's condition.  Second, the Court will review Dr. Bazemore's treatment of Plaintiff.  The submissions of the parties, viewed in the light most favorable to the nonmoving party, establish the following facts:

**A.    Plaintiff's Condition**

Plaintiff suffers from glaucoma, which is a blinding eye disease.  Affidavit of Dr. Thomas J. Landgraf, O.D. (Doc. # 41-2, at 4).  "Glaucoma is an eye disease that causes the intra-ocular pressure ["IOP"] of the eye to become elevated.  These elevated [IOPs] result in damage to the optic nerve.  The damage to the optic nerve causes a reduction of the visual field.  As more and more of the visual field is lost, blindness occurs."  (Doc. # 41-2, at 4).  Plaintiff is now blind in his right eye.  (Doc. # 12, ¶ 13).

There are different types of glaucoma.  One type is angle-closure glaucoma, in which "the angle of the eye closes and the aqueous flow through the eye is blocked," causing elevated IOP.  (Doc. # 41-2, at 4).  The elevated IOP causes corneal edema, or swelling in the cornea, which is the eye's outer membrane.  (*Id.* at 4-5).  Corneal edema causes three symptoms: blurry vision, the appearance of halos around lights, and a loss of visual acuity.  (*Id.* at 5).

Optometrists are doctors who are trained to examine eyes and check for refractive error, which has to do with how people see, and health problems, such as glaucoma.  Deposition of Dr. David Bazemore (Doc. # 37-5, at 34-35).  Optometrists must screen

patients for angle-closure glaucoma through understanding the patient's history and symptoms and by conducting tests to measure the IOP and viewing the angle of the eye. (Doc. # 41-2, at 5).

There are two types of angle-closure glaucoma: acute and subacute. Subacute, or chronic, angle-closure glaucoma "is characterized by intermittent episodes of angle-closure," or "glaucoma attacks." (*Id.*). These attacks often occur when a patient is tired or stressed, and symptoms often are worse at night. (*Id.*).

Optometrists must screen for and detect angle-closure glaucoma, and specifically, subacute angle-closure glaucoma. (*Id.*). Optometrists must refer patients who suffer from subacute angle-closure glaucoma to an ophthalmologist. (*Id.*). Only ophthalmologists can perform the necessary procedures to treat subacute angle-closure glaucoma. (*Id.*).

When a patient reports blurry vision, the appearance of halos around lights, and a loss of visual acuity, an optometrist must perform several tests to check for subacute angle-closure glaucoma. (*Id.*). The patient's IOP must be measured using Goldmann, or contact tonometry because it offers the most accurate reading of IOP. (*Id.*); (Doc. # 40, at 4-5). The patient's eye angles must be checked using a gonioscope because it offers a better view of the eye angle than a slit-lamp exam, which is another test to view the eye angle. (*Id.*); (Doc. # 40, at 4). Moreover, when a patients reports these symptoms, an optometrist must refer the patient to an ophthalmologist for further testing. (*Id.*). The

5

testing and referral must occur even if the patient does not have elevated IOP at the time of the optometry exam. (*Id.*).

B.   **Dr. Bazemore's Treatment of Plaintiff**

Dr. Bazemore is a licensed optometrist. (Doc. # 12, ¶ 5). At all times relevant to this case, Dr. Bazemore was an optometrist at Wal-Mart's vision center in its Lee County, Alabama store. (Doc. # 12, ¶¶ 5, 15).

Plaintiff visited Defendants for the purpose of optical treatment on four occasions from 2000 to 2004. Motion for Summary Judgment (Doc. # 37, at 3-5). The visit that is important to review with respect to the issues raised in Defendants' motion is the fourth and final visit, which occurred on August 20, 2004. (Doc. # 12, ¶ 6).[2] During this visit, Plaintiff informed Defendant of vision loss in his right eye. (*Id.* ¶ 7). His vision was clouded, as if he had a filter over his eye, and he saw halos around lights. (*Id.*). These symptoms were worse at night. Plaintiff's Brief in Opposition to Defendants' Motion for Summary Judgment (Doc. # 40, at 2). Plaintiff had these symptoms for two months prior to the visit, and the symptoms had been getting worse. (*Id.*).

During the August 20, 2004 visit, Dr. Bazemore conducted several tests on Plaintiff. Dr. Bazemore conducted a "Marcus Gunn" pupillary defect test to see if Plaintiff had any nerve damage. (Doc. # 37, at 5). Nerve damage would indicate whether Plaintiff's IOP was elevated in the past. (*Id.*). The test did not indicate any nerve

---

[2] The details of the first three visits are summarized in the Motion for Summary Judgment (Doc. # 37, at 3-5). These visits were not specifically referenced in the Complaint.

damage. (*Id.*).

Dr. Bazemore viewed Plaintiff's eye angles with a slit-lamp exam, which graded them as wide open, and not closed. (Doc. # 37, at 5). He did not check for eye angle closure with a gonioscope, even though he had a gonioscope at the time of Plaintiff's 2004 visit. (Doc. # 37-5, at 120). Dr. Bazemore measured Plaintiff's IOP via noncontract tonometry, (Doc. # 37, at 5-6). His measured Plaintiff's IOP as 13 millimeters of mercury (mm Hg) in the right eye and 12 mm hg in the left eye. (*Id.* at 6). IOPs below 21 mm hg are considered normal. (*Id.* at 8). He did not measure Plaintiff's IOP with Goldmann's (contact) tonometry, even though he could have done so. (Doc. # 37-5, at 170, 188). Dr. Bazemore did not diagnose Plaintiff with glaucoma, and he did not refer Plaintiff to an ophthalmologist. (Doc. # 12, ¶ 9). He told Plaintiff to return in one year. (Doc. # 37-5, at 207-08).

In February, 2005, Plaintiff's family physician referred him to Dr. Gregory J. Sepanski, M.D., an ophthalmologist. (Doc. # 40, at 5). On March 7, 2005, Dr. Sepanski diagnosed Plaintiff with glaucoma. (*Id.* ¶ 10). Specifically, Plaintiff had subacute angle closure at the time of this visit. (Doc. # 41-3, at 1). On May 4, 2005, Plaintiff had surgery on his right eye to treat the glaucoma. (*Id.* ¶ 11). Plaintiff is now blind in his right eye. (Doc. # 12, ¶ 13).

## V. DISCUSSION

Plaintiff's claim is governed by the Alabama Medical Liability Act, which requires

doctors to exercise "such reasonable care, diligence and skill" as doctors "in the same general neighborhood, and in the same general line of practice, ordinarily have and exercise in a like case." ALA. CODE § 6-5-484(a). A plaintiff who alleges a breach of this duty must establish the following elements with expert testimony: "(1) the appropriate standard of care, (2) the doctor's deviation from that standard, and (3) a proximate causal connection between the doctor's act or omission constituting the breach and the injury sustained by the plaintiff." *Bradford v. McGee*, 534 So. 2d 1076, 1079 (Ala. 1988) (citations omitted). In their Motion for Summary Judgment, Defendants argue that Plaintiffs did not establish causation. (Doc. # 37, at 13-16). They do not argue that Dr. Bazemore met the appropriate standard of care. However, Defendants submitted expert testimony that says Dr. Bazemore met the standard of care (Doc. Nos. 37-3 and 37-4), and Plaintiff submitted evidence that Dr. Bazemore breached the standard of care (Doc. # 41-2). Therefore, first, the Court will discuss the standard of care element. Second, the Court will discuss the causation element. Finally, the Court will discuss whether Wal-Mart can be held liable for Dr. Bazemore's conduct.

**A.    Whether Dr. Bazemore breached the appropriate standard of care**

"To establish a physician's negligence, the plaintiff ordinarily must proffer expert medical testimony as to what is or is not the proper practice, treatment, or procedure." *Complete Family Care v. Sprinkle*, 638 So. 2d 774, 777 (Ala. 1994). The appropriate standard is that of the "national medical community." *Id.* (citing ALA. CODE § 6-5-484;

*McGee*, 534 So. 2d 1076).

In this case, Plaintiff submitted evidence from Dr. Landgraf, a licensed optometrist in Tennessee, that Dr. Bazemore did not meet the appropriate standard of care in Alabama when treating Plaintiff because (1) he did not view the angle of Plaintiff's eye with a gonioscope; (2) he did not measure Plaintiff's IOP with Golmann tonometry; and (3) he did not refer Plaintiff to an ophthalmologist in light of the symptoms of subacute angle-closure glaucoma, which are blurry vision, the appearance of halos around lights, and a loss of visual acuity. (Doc. # 41-2, at 6-7).

Defendants presented evidence that Dr. Bazemore met the appropriate standard of care. Dr. Brett Basden, a licensed optometrist in Alabama, testified that Dr. Bazemore "performed all tests consistent with the standard of care in the State of Alabama." (Doc. # 37-3, at 3). Dr. Richard Murphy, a licensed optometrist in Alabama, testified that it is not the standard of care in Alabama to use a gonioscope on every patient to measure eye angles. (Doc. # 37-4, at 4). With respect to measuring IOP, Dr. Murphy also testified that the standard of care is to use noncontact tonometry initially, and Goldmann tonometry is only used as a backup if IOP is measured outside normal ranges. (*Id.*).

The evidence, when viewed in the light most favorable to Plaintiff, does not support Defendants' motion on this issue. First, there is conflicting expert testimony on the standard of care with respect to which tests optometrists should perform when measuring eye angles and IOP levels. Dr. Landgraf testified that a gonioscope and

Goldmann tonometry should be used. Drs. Basden and Murphy testified that these tests do not need to be used, but they refer to the standard of care in Alabama, and not the nation. Second, Dr. Landgraf testified that, under the appropriate standard of care, optometrists should refer patients with Plaintiff's symptoms to ophthalmologists, regardless of the results IOP and eye angle tests. Defendants' experts did not refute this specific assertion, although they said that Dr. Bazemore did not breach the standard of care. There are genuine issues of material fact as to whether Dr. Bazemore used the proper tests and whether he should have referred Plaintiff to an ophthalmologist based on the symptoms he reported. Therefore, Defendants' motion for summary judgment is due to be DENIED with respect to the issue of the alleged breach of the standard of care.

**B.     Whether the failure to refer Plaintiff to an ophthalmologist probably caused his vision loss**

Defendants argue that Plaintiff's evidence falls "woefully short" of establishing that Dr. Bazemore's alleged negligence probably caused Plaintiff's injury. (Doc. # 37, at 15). Defendants point out that Dr. Landgraf did not say that Dr. Bazemore would have found a closed angle and an elevated IOP had he conducted gonioscopy and Goldmann tonometry, respectively. (*Id.* at 15-16). Dr. Landgraf only points out that these instruments would have given more accurate measurements. Therefore, Defendants argue, Plaintiff only has established a mere possibility that the optometry exam results would have been different.

Defendants' argument fails to address Plaintiff's expert testimony that Dr.

10

Bazemore should have referred Plaintiff to an ophthalmologist because he reported the symptoms of blurry vision, the appearance of halos around lights, and a loss of visual acuity.  Thus, regardless of the results of the eye angle and IOP measurements, it is Plaintiff's contention that Dr. Bazemore should have referred him to an ophthalmologist at the 2004 visit.

Plaintiff has presented evidence that the delay in seeing an ophthalmologist worsened his injury.  Drs. Sepanski and Alabata testified that Plaintiff was probably suffering from subacute angle-closure glaucoma at the time of the August 20, 2004 optometry exam.  (Doc. # 41-3, at 1); (Doc. # 41-4, at 1).  Dr. Landgraf testified that if subacute angle-closure glaucoma is not detected and left untreated, then "severe vision loss and blindness" would result.  (Doc. # 41-2, at 5).  Dr. Sepanski testified that at the time of Plaintiff's March, 2005 visit to Dr. Sepanski's office, Plaintiff was suffering from angle-closure glaucoma.  (Doc. # 41-3, at 1).  Dr. Sepanski noted that at this time, Plaintiff had afferent pupillary defect, which results when there has been damage to the optical nerve over an extended period time.  (*Id.*).  Dr. Sepanski testified that had Plaintiff ben referred to an ophthalmologist on August 20, 2004, "his vision loss in all likelihood would have been prevented."  (*Id.*).  Therefore, the evidence, when viewed in the light most favorable to Plaintiff, shows that Dr. Bazemore's failure to refer Plaintiff to an ophthalmologist caused his condition to worsen between his August 20, 2004 optometry exam and his March, 2005 visit with Dr. Sepanski.  Therefore, the evidence does not

support Defendants' motion on the issue of causation, and Defendants' motion for summary judgment is due to be DENIED with respect to the issue of whether Dr. Bazemore's alleged negligence caused injury to Plaintiff.

**C.     Whether Wal-Mart can be held liable for Dr. Bazemore's actions**

Defendants argue that Wal-Mart cannot be liable for Dr. Bazemore's conduct because he is an independent contractor, and not an employee. (Doc. # 37, at 17). Plaintiff argues that Dr. Bazemore had apparent authority to bind Wal-Mart to his actions. (Doc. # 40, at 11). Apparent authority exists when a purported principal holds out a purported agent as having the authority to bind the principal. *John Deere Const. Equipment Co. v. England*, 883 So. 2d 173, 179 (Ala. 2003) (quoting *Malmberg v. American Honda Motor Co., Inc.*, 644 So. 2d 888, 891 (Ala. 1994)). Apparent authority is based only on the conduct of the purported principal, and not the belief of the third party or the conduct of the purported agent. *Id.* The third party must have relied on the appearance of an agency relationship. *Brown ex rel. Brown v. St. Vincent's Hosp.*, 899 So. 2d 227, 238 (Ala. 2004). Thus, because of the conduct of the principal, the third party must believe that there is a principal-agent relationship under which the principal has the right to control the agent. When facing a summary judgment motion, a nonmovant who argues that apparent authority existed must present evidence to defeat the motion. *Id.* at 238-39.

Defendants argue that Dr. Bazemore did not have apparent authority to bind Wal-

12

Mart for two reasons. First, the license agreement between Dr. Bazemore and Wal-Mart prohibited Dr. Bazemore from holding himself out to be an agent of Wal-Mart. This argument raises an irrelevant fact because the test for apparent authority looks at whether Wal-Mart held Dr. Bazemore out as its agent to third parties. There is no evidence that the license agreement between Wal-Mart and Dr. Bazemore was available to third parties, such as Plaintiff. Therefore, it is possible that Dr. Bazemore had apparent authority even though his license agreement prohibited him from holding himself out as Wal-Mart's agent.

Second, Defendants argue that Dr. Bazemore did not have apparent authority because, in the contractual agreement between Wal-Mart and Dr. Bazemore, Wal-Mart did not reserve the right to control the method and manner in which Dr. Bazemore practiced in the field of optometry. (Doc. # 37, at 17-18). Although Wal-Mart has presented evidence that Dr. Bazemore did not have actual authority, the test for apparent authority is whether Wal-Mart held Dr. Bazemore out as its agent to third parties.

As evidence that Wal-Mart held Dr. Bazemore out as its agent to third parties, Plaintiff points out that Dr. Bazemore's optometry office is located inside the Wal-Mart facility and that the office is marketed as a Wal-Mart vision center, including being found in the telephone directory under Wal-Mart's listing. (Doc. # 40, at 11). The Court finds that this evidence is insufficient. In *Brown ex rel. Brown v. St. Vincent's Hosp.*, 899 So. 2d 227, 238 (Ala. 2004), a plaintiff whose child was born with permanent nerve damage

sued a hospital under the theory of apparent authority. The plaintiff saw a "television advertisement by [a hospital] that 'concerned' the 'delivery of obstetrical services in birthing suites' at the hospital's 'relatively new Women's and Children's Center.'" *Id.* at 239 (citing plaintiff's affidavit). The court in *Brown* found that this evidence was insufficient to establish apparent authority because the plaintiff "[did] not describe the content of the advertisement or explain how that content 'led [her] to believe' that [the hospital] was holding itself out in the way she subjectively perceived. She provide[d] no facts from which the trial court could determine that her belief was objectively reasonable based on the content of the television advertisement." *Id.* Similarly, in this case, Plaintiff has not presented any evidence that Wal-Mart held out Dr. Bazemore as its agent because of the fact that Wal-Mart's advertisements referred to Dr. Bazemore's office as a Wal-Mart vision center. There is no evidence that Wal-Mart represents that it has any control over Dr. Bazemore's work.

Furthermore, Plaintiff has not presented any evidence that he relied on his belief that an agency relationship existed between Dr. Bazemore and Wal-Mart. For example, there is no evidence that Plaintiff visited Dr. Bazemore because of his confidence in Wal-Mart. *Cf. Malmberg*, 644 So. 2d at 891. Therefore, Defendants motion for summary judgment is due to be GRANTED with respect to the issue of whether Dr. Bazemore had apparent authority from Wal-Mart.

## VI. CONCLUSION

Accordingly, it is hereby ORDERED as follows

1. Defendants' Motion for Summary Judgment (Doc. # 37) is GRANTED with respect to Plaintiff's claims against Defendant Wal-Mart.  All of Plaintiff's claims against Defendant Wal-Mart are DISMISSED.

2. Defendants' Motion for Summary Judgment is DENIED with respect to Plaintiff's claims against Defendant Dr. Bazemore.

Done on this the 14th day of November, 2007.

        /s/ Mark E. Fuller
CHIEF UNITED STATES DISTRICT JUDGE