IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | | |
|---|---|---|
| KYLE BENGSTON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | CASE NO. 3:06-cv-00569-MEF |
| | ) | |
| DAVID BAZEMORE, O.D., | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER ON PRETRIAL HEARING

A pretrial hearing is scheduled in this case on November 2, 2007, wherein the following proceedings will be held and actions will be taken:

### PARTIES AND TRIAL COUNSEL

Kyle Bengston, Plaintiff
David Bazemore, Defendant
James B. Douglas, Jr., Attorney for Plaintiff
David W. Adams, Attorney for Plaintiff
Phillip E. Adams, Attorney for Defendant
Matthew W. White, Attorney for Defendant
Blake L. Oliver, Attorney for Defendant

### COUNSEL APPEARING AT PRETRIAL HEARING:

Kyle Bengston, Plaintiff
David Bazemore, Defendant
Wal-Mart Stores, Inc., Defendant[1]
James B. Douglas, Jr., Attorney for Plaintiff
David W. Adams, Attorney for Plaintiff
Phillip E. Adams, Attorney for Defendants
Matthew W. White, Attorney for Defendants

---

[1] Wal-Mart was dismissed pursuant to this Court's Memorandum Opinion and Order entered on November 14, 2007 (Doc. # 60).

Blake L. Oliver, Attorney for Defendants

## JURISDICTION AND VENUE

The allegations in this case are characterized as negligence and wantonness under the Alabama Medical Liability Act. The parties in this matter are all citizens of different states, therefore, this Court has jurisdiction under Diversity of Citizenship. Venue is proper in the Unites States District Court for the Middle District of Alabama, Eastern Division.

## PLEADINGS

The pleadings filed in this case were: the Complaint, First Amended Complaint, Plaintiff's unopposed Motion to Dismiss an improper party as well as both Defendants' Answers to the Plaintiff's allegations.

## CONTENTIONS OF THE PARTIES

**(a).   The Plaintiff:**

1.   Plaintiff was a patient of the Defendant from 2000 until 2004. During Plaintiff's treatment with Defendant, particularly on August 20, 2004, Plaintiff informed Defendant of an unexplained vision loss in his right eye, expressing to Defendant that his vision was blurry as if it had a "filter" over it.

2.   On August 20, 2004, Plaintiff informed Defendant that he was seeing "halos" around lights, in his right eye, that this symptom was worse at night, and had been worsening over previous months. Also, at that visit, Defendant was unable to restore

Plaintiff's corrected vision, in his right eye, to 20/20, Plaintiff's best corrected vision on that date was 20/25; Plaintiff had previously had his vision corrected, in his right eye, to 20/20. Furthermore, from the time of Plaintiff's previous visit until August 20, 2004, Plaintiff had suffered vision loss, uncorrected, in his right eye, from 20/50 to 20/100.

3.  Plaintiff contends that three of the chief symptoms of intermittent angle closure glaucoma are seeing halos around lights, blurry vision, and loss of visual acuity. This fact should have been recognized by Defendant, as Plaintiff presented with all three on August 20, 2004.

4.  The Plaintiff contends that a patient who presents with the symptoms which the Plaintiff did on August 20, 2004, must immediately be referred to an ophthalmologist for possible surgical intervention to save the patient's eyesight. Also, due to the symptoms Plaintiff presented with, coupled with his unexplained vision loss, Defendant should have utilized further testing to determine the cause of said symptoms, including reasonable follow up, none of which was done by Defendant.

5.  Plaintiff further contends that the Defendant did not perform the appropriate tests for glaucoma, including the failure to use a gonioscope, which is far more reliable than the test the Defendant performed on the Plaintiff.

6.  Plaintiff contends that the Defendant breached the applicable standard of care under the Alabama Medical Liability Act by failing to properly treat, failing to conduct a timely follow-up exam, failing to diagnose, and failing to refer the Plaintiff to

an ophthalmologist.

7. The Plaintiff eventually suffered virtually total vision loss in his right eye as a result of the Defendant's breach of the standard of care.

8. Plaintiff contends that, had the Plaintiff been timely referred to an ophthalmologist, his vision loss, in all likelihood, would have been avoided. At a minimum, Plaintiff contends that the Defendant's failure to diagnose decreased the opportunity for a successful outcome.

9. Plaintiff also contends that Defendant's treatment of the Plaintiff was so reckless, given all of the symptoms of glaucoma, which were present, that the Defendant's actions constitute wantonness under Alabama Law.

10. Plaintiff contends that he has suffered injuries and damages, including past and future medical expenses, and the complete loss of vision in his right eye.

11. Plaintiff contends that he has suffered and will continue to suffer, pain and suffering.

12. Plaintiff contends that he has suffered and will continue to suffer, mental anguish.

13. Plaintiff contends that the he has suffered lost wages and will in the future suffer lost wages.

14. Plaintiff contends that Defendant should be subject to punitive damages as a result of its conduct in this matter.

**(b)  The Defendant:**

1. Defendant Bazemore contends that he did not breach the applicable standard of care in his treatment of the Plaintiff.

2. Defendant Bazemore contends that he performed a thorough examination on Plaintiff on August 20, 2004 and that there was no evidence of any type of glaucoma present at the time of the examination.

3. Defendant Bazemore contends that there was no reason to refer the Plaintiff to an ophthalmologist at the time of the August 20, 2004 office visit.

4. Defendant Bazemore contends that he performed all appropriate tests for glaucoma at the August 20, 2004 office visit, all of which were negative for glaucoma.

5. Defendant Bazemore contends that all of the symptoms Plaintiff presented with at the August 20, 2004 office visit are more commonly symptoms of conditions other than glaucoma, and that there was absolutely no evidence of glaucoma on that date.

6. Defendant Bazemore contends that, even if he had done the tests that Plaintiff's experts say he should have done, and even if he had referred the patient to an ophthalmologist on August 20, 2004, there is no evidence that the different tests would have revealed the presence of glaucoma or that an ophthalmologist would have diagnosed the patient with glaucoma on that date.

7. Defendant Bazemore contends that contends that, even if he had done the tests that Plaintiff's experts say he should have done, and even if he had referred the patient to an

ophthalmologist on August 20, 2004, there is no reason to believe that the Plaintiff's current condition would be different in any way.

8.      Defendant Bazemore contends that there is no casual link between any of his actions and the damages alleged by the Plaintiff.

9.      Defendant Bazemore denies that Plaintiff has suffered "virtually total vision loss in his right eye."

10.     Defendants deny that Plaintiff has suffered "complete loss of vision in his right eye."

11.     Defendant Bazemore contends that it is now known that the Plaintiff suffers from a very rare eye syndrome known as "ICE" which is virtually undetectable in its early stages.

12.     Defendant Bazemore contends that the Plaintiff has not produced sufficient evidence that he had intermittent angle closure glaucoma on August 20, 2004.

13.     Defendant Bazemore contends that the Plaintiff has not produced sufficient evidence that he had ICE syndrome on August 20, 2004.

14.     Defendant Bazemore contends that the Plaintiff has continued to lose his vision even after surgical intervention and being seen by numerous medical care providers.

15.     Defendant Bazemore denies that he is guilty of wantonness.

16.     Defendants deny that Plaintiff has suffered lost wages.

17.     Defendants deny that the Plaintiff is entitled to punitive damage..

**STIPULATIONS BY AND BETWEEN THE PARTIES**

1.  On March 24, 2000, Plaintiff was treated by Dr. David Bazemore, at his clinic in Wal-Mart Stores, Inc., the records of said visit, are genuine, authentic, and admissible in this matter for purposes of showing what treatment was received at said visit.

2.  On October 2, 2001 Plaintiff was treated by Dr. David Bazemore, at his clinic in Wal-Mart Stores, Inc., the records of said visit, are genuine, authentic, and admissible in this matter for purposes of showing what treatment was received at said visit.

3.  On September 27, 2003, Plaintiff was treated by Dr. David Bazemore, at his clinic in Wal-Mart Stores, Inc., the records of said visit, are genuine, authentic, and admissible in this matter for purposes of showing what treatment was received at said visit.

4.  On August 20, 2004, Plaintiff was treated by Dr. David Bazemore, at his clinic in Wal-Mart Stores, Inc., the records of said visit, are genuine, authentic, and admissible in this matter for purposes of showing what treatment was received at said visit.

5.  On February 18, 2005, Plaintiff was treated by Dr. J. Reed Cooper, the records of said visit, are genuine, authentic, and admissible in this matter for purposes of showing what treatment was received at said visit.

6.  On February 25, 2005, Plaintiff was treated by Dr. J. Reed Cooper, the records of said visit, are genuine, authentic, and admissible in this matter for purposes of showing what treatment was received at said visit.

7.  On March 7, 2005, Plaintiff was treated by Dr. Gregory Sepanski, the records of

said visit, are genuine, authentic, and admissible in this matter for purposes of showing what treatment was received at said visit.

8. On March 25, 2005, Plaintiff was treated by Dr. Gregory Sepanski, the records of said visit, are genuine, authentic, and admissible in this matter for purposes of showing what treatment was received at said visit.

9. On April 17, 2005, Plaintiff was treated by Dr. Gregory Sepanski, the records of said visit, are genuine, authentic, and admissible in this matter for purposes of showing what treatment was received at said visit.

10. On April 26, 2005, Plaintiff was treated by Dr. Gregory Sepanski, the records of said visit, are genuine, authentic, and admissible in this matter for purposes of showing what treatment was received at said visit.

11. On May 4, 2005, Plaintiff underwent a Trabeculectomy with Minomycin C in the right eye at East Alabama Medical Center. Said surgery was performed by Dr. Sepanski. The records of said surgery, including those from East Alabama Medical Center, are authentic and admissible in this matter to show what treatment was received.

12. On May 5, 2005, Plaintiff was treated by Dr. Gregory Sepanski, the records of said visit, are genuine, authentic, and admissible in this matter for purposes of showing what treatment was received at said visit.

13. On May 6, 2005, Plaintiff was treated by Dr. Gregory Sepanski, the records of said visit, are genuine, authentic, and admissible in this matter for purposes of showing what

treatment was received at said visit.

14. On May 9, 2005, Plaintiff was treated by Dr. Gregory Sepanski, the records of said visit, are genuine, authentic, and admissible in this matter for purposes of showing what treatment was received at said visit.

15. On May 12, 2005, Plaintiff was treated by Dr. Gregory Sepanski, the records of said visit, are genuine, authentic, and admissible in this matter for purposes of showing what treatment was received at said visit.

16. On May 16, 2005, Plaintiff was treated by Dr. Gregory Sepanski, the records of said visit, are genuine, authentic, and admissible in this matter for purposes of showing what treatment was received at said visit.

17. On May 23, 2005, Plaintiff was treated by Dr. Gregory Sepanski, the records of said visit, are genuine, authentic, and admissible in this matter for purposes of showing what treatment was received at said visit.

18. On June 3, 2005, Plaintiff was treated by Dr. Gregory Sepanski, the records of said visit, are genuine, authentic, and admissible in this matter for purposes of showing what treatment was received at said visit.

19. On June 13, 2005, Plaintiff was treated by Dr. Gregory Sepanski, the records of said visit, are genuine, authentic, and admissible in this matter for purposes of showing what treatment was received at said visit.

20. On July 15, 2005, Plaintiff was treated by Dr. Gregory Sepanski, the records of

said visit, are genuine, authentic, and admissible in this matter for purposes of showing what treatment was received at said visit.

21.    On July 29, 2005, Plaintiff was treated by Dr. Gregory Sepanski, the records of said visit, are genuine, authentic, and admissible in this matter for purposes of showing what treatment was received at said visit.

22.    On October 7, 2005, Plaintiff was treated by Dr. Bert Anz, the records of said visit, are genuine, authentic, and admissible in this matter for purposes of showing what treatment was received at said visit.

23.    On April 14, 2006 Plaintiff was treated by Dr. Bert Anz, the records of said visit, are genuine, authentic, and admissible in this matter for purposes of showing what treatment was received at said visit.

24.    On April 15, 2006 Plaintiff was treated by Dr. Bert Anz, the records of said visit, are genuine, authentic, and admissible in this matter for purposes of showing what treatment was received at said visit.

25.    On April 16, 2006 Plaintiff was treated by Dr. Bert Anz, the records of said visit, are genuine, authentic, and admissible in this matter for purposes of showing what treatment was received at said visit.

26.    On December 11, 2006, Plaintiff was treated by Retina Specialist, under the care of Dr. Maggie Shuler, the records of said visit, are genuine, authentic, and admissible in this matter for purposes of showing what treatment was received at said visit.

27. On December 19, 2006, Plaintiff was treated by Retina Specialist, under the care of Dr. Maggie Shuler, the records of said visit, are genuine, authentic, and admissible in this matter for purposes of showing what treatment was received at said visit.

28. On May 10, 2006, Plaintiff was treated by Mollega Eye Care, under the care of Dr. Rafael Mollega, the records of said visit, are genuine, authentic, and admissible in this matter for purposes of showing what treatment was received at said visit.

29. On January 26, 2007, Plaintiff visited Emerald Coast Eye Institute, under the care of Dr. Phil C. Alabata, the records of said visit, are genuine, authentic, and admissible in this matter for purposes of showing what treatment was received at said visit.

30. On February 16, 2007, Plaintiff visited Emerald Coast Eye Institute, under the care of Dr. Phil C. Alabata, the records of said visit, are genuine, authentic, and admissible in this matter for purposes of showing what treatment was received at said visit.

31. On May 11, 2007, Plaintiff visited Emerald Coast Eye Institute, under the care of Dr. Phil C. Alabata, the records of said visit, are genuine, authentic, and admissible in this matter for purposes of showing what treatment was received at said visit.

32. All of the medical records of the Plaintiff are true, correct, and authentic.

33. The office, which Defendant Bazemore was working out of, was in the Wal-Mart facility in Opelika, Alabama.

It is ORDERED that:

(1) The jury selection and trial of this cause, which is to last two (2) days, are set for December 10, 2007, at 10:00 a.m. at the United States Courthouse in Opelika, Alabama;

(2)    A trial docket will be mailed to counsel for each party approximately three weeks prior to the start of the trial term;

(3)    The parties are to file their pre-trial briefs, if any, by December 3, 2007;

(4)    Each party shall have available at the time of trial, for use by the court (the judge, the courtroom deputy clerk, and the law clerk), three copies of the exhibit list and a sufficient number of copies of each photostatically reproducible exhibit for opposing counsel, the courtroom deputy clerk, the law clerk, and the judge to each have a set of the exhibits;

(5)    All deadlines not otherwise effected by this order will remain as set forth in the Uniform Scheduling Order (Doc. #31) entered by the court on October 6, 2006;

(6)    All understandings, agreements, deadlines, and stipulations contained in this Pretrial Order shall be binding on all parties unless this Order be hereafter modified by Order of the Court.

DONE this the 16th day of November, 2007.

/s/ Mark E. Fuller
CHIEF UNITED STATES DISTRICT JUDGE